# STATE OF MARYLAND *v.* JONES

[No. 83, September Term, 1973.]

*Decided December 3, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*James G. Klair, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General*, and *Edward F. Borgerding, Assistant Attorney General*, on the brief, for appellant.

*Chester Cohen, Assigned Public Defender*, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

In *Jones v. State*, 17 Md. App. 130, 300 A. 2d 392 (1973) the Court of Special Appeals, by a divided panel, reversed Jones' armed robbery conviction and ordered a new trial on the ground that the trial judge had abused his discretion in denying Jones' request to withdraw his prior waiver of a jury trial. We granted certiorari to consider whether the Court of Special Appeals erred in so concluding.

The pertinent facts are these: Jones' case was scheduled for trial on March 30, 1971, before Judge Albert L. Sklar in the Criminal Court of Baltimore. On that date, Jones pleaded not guilty and elected a jury trial. After voir dire examination of the jury panel was concluded, a jury was selected but not sworn, it being agreed that the trial would be continued until April 5, 1971 due to the annual meeting of the Maryland Judicial Conference. After the jury was excused, Jones personally addressed the court, saying:

> ". . . I don't think that jury selection was fair because that is not the jury of my choice. I did not have the proper understanding of the proceedings of picking a jury. I don't think it is fair and that is not the jury I want."

Jones admitted that his court-appointed attorney had informed him that he was limited in the jury selection process to twenty peremptory strikes, but claimed that he

"wasn't aware of what he [his attorney] was saying at the time." Jones told the court that he wanted to "strike another jury . . . to get down to the ones I want to judge this case." Judge Sklar denied the request.

On April 5, before the jury was sworn, Jones' counsel advised Judge Sklar that Jones "has just informed me he requests a Court trial instead of a jury trial." The court then carefully explained to Jones the difference between a court trial and a jury trial; Jones said he understood. Thereafter, the court told Jones that he was waiving his right to a jury trial and that "if you change your mind again and say you want a jury trial later on, you won't be able to get a jury trial because you have given up your right to a jury trial." Asked by the court three separate times if he so understood, Jones responded each time that he did. After the court accepted Jones' waiver of trial by jury, his counsel requested a postponement, stating that he learned that morning that Jones had a witness "that would be crucial . . . to our defense," and that he needed time to interview her. The State objected, claiming that Jones' "eleventh hour" request for .a postponement was a delaying tactic. Judge Sklar granted a two-week postponement to afford Jones "every reasonable opportunity of getting his defense in order."

On April 26, 1971, Jones' case was again set for trial before Judge Sklar. Jones requested a further postponement, claiming that he had not been successful in contacting his witness; Judge Sklar granted a further postponement.

Trial of the case before Judge Sklar was re-set for May 20, 1971. On that date, Jones moved to dismiss his court-appointed counsel, contending that he was incompetent because of the manner in which he had counseled him during the jury selection process at the proceedings held on March 30, 1971. Jones said that he had not raised the incompetency question earlier because he "had to give it plenty of thought first." He told the court that he wanted to employ his own lawyer, that his mother would "probably" help him financially to do so, and that he would need "a couple months" to engage new counsel and prepare for trial. While expressing belief that Jones' court-appointed

counsel was a competent attorney, Judge Sklar stated that he would nevertheless permit him to withdraw from the case. He advised Jones that he would be rearraigned on June 10, and that privately retained counsel should be engaged prior to that time.

There is no record of any proceeding held on June 10. Because Jones failed to employ his own counsel, the court appointed new counsel to represent him, his appearance being entered on July 15, 1971. The case was finally set for trial before Judge Solomon Liss on December 6, 1971, at which time Jones asked for a jury trial. Judge Liss reviewed the transcript of the prior proceedings, and observed that Jones had previously waived a jury trial, and elected to be tried by the court. He noted that Jones had assisted his counsel in selecting the jury, had exercised his twenty peremptory challenges, and then "took a look at the jury, he wasn't happy with them, so he decided he wanted a Court trial." Judge Liss made the further observation that Judge Sklar made it "perfectly clear" to Jones that his waiver of trial by jury would be binding upon him and that "I don't think at this point, having gotten what he wanted apparently, which was a postponement and a delay, he can now come in and say I have changed my mind again." [1]

Judge Liss clarified his reasons for refusing to permit Jones to withdraw his waiver of a jury trial when he disposed of Jones' motion for a new trial. He said that because Jones did not want to be tried by the jury selected at the proceedings held on March 30, 1971, it was a tactical maneuver on his part thereafter to elect a court trial; that there was no assurance that if Jones were permitted to select another jury, that he would not again have changed his mind if the jury was not to his liking; and that "such tactics on the part of the defendant is an obstruction of the administration of justice."

In concluding that Judge Liss abused his discretion in

---

1. Jones was thereafter tried by the court, convicted of armed robbery, and sentenced to twelve years imprisonment. The "crucial" defense witness that Jones wanted to interview, and on account of whom he obtained two trial postponements, was not produced in court.

refusing to permit Jones to withdraw his waiver, the Court of Special Appeals stated that under Maryland Rule 741,[2] as interpreted and applied in *Staten v. State,* 13 Md. App. 425, 283 A. 2d 644 (1971) and *Cole v. State,* 12 Md. App. 379, 277 A. 2d 248 (1971), a previous election, for good cause shown, "may be withdrawn up until the actual commencement of the trial unless there is a showing that granting of the motion would unduly delay the trial or otherwise impede justice"; that the record indicated that a jury was immediately available for trial on December 6; and that although "an accused obviously cannot be permitted to change his election as a dilatory tactic, . . . from the complete record, there was at least a modicum of doubt that the accused fully understood the method by which a jury was selected at the time he participated with his counsel in selection of the jury." *Jones v. State, supra,* at 134-135. In reaching its conclusion, the court found it significant that several months had elapsed since Jones had elected a court trial, that a different judge was presiding at the trial than at the time of the original election, and that new trial counsel had been appointed in the interim. Dissenting, Judge Moylan expressed the view that "[t]he clear import of Judge Liss's ruling is that to permit a defendant, no matter how convoluted and drawn out his path to his objective, to get rid of one jury he doesn't like and then to pick another in its stead would be, *ipso facto,* to 'impede justice.'" *Jones v. State, supra,* at 152. He found no abuse of discretion in the denial and noted that Jones had not met his initial burden under Rule 741 of showing "good cause" for withdrawing his prior election of a court trial. Judge Moylan concluded:

"I see in this case a frightening demonstration of how over-solicitude can permit criminal dockets to become jammed almost beyond hope of redemption

---

2. "An accused may elect to be tried by jury or by the court. Such election shall be made by the accused in open court when first called upon to plead after he is represented by counsel of record or has waived counsel. If an accused elects to be tried by the court, the State may not elect a jury trial. The court may, in its discretion and for good cause shown, at any time prior to the trial permit the accused to change his election."

and can permit interminable stops and starts to corrode the very face of justice. I see a Svengali-like appellant who has manipulated shockingly the courts and his attorneys alike. I see a resolute judge who finally called a halt. I applaud. Needless to say, there is subsumed in that greater approbation the firm belief that Judge Liss, at the very least, did not abuse his discretion. . . ."

That an accused may waive his right to a jury trial and elect to be tried by the court is clear. *State v. Zimmerman,* 261 Md. 11, 273 A. 2d 156 (1971); *Rose v. State,* 177 Md. 577, 10 A. 2d 617 (1940). Under the prevailing rule an accused has no absolute right to withdraw his waiver of a jury trial; whether it will be permitted is a matter committed to the sound discretion of the trial court. *Scates v. State,* 244 Ark. 333, 424 S.W.2d 876 (1968); *People v. Sears,* 138 Cal. App. 2d 773, 292 P. 2d 663 (1956); *People v. Melton,* 125 Cal. App. 2d Supp. 901, 271 P. 2d 962 (1954); *State v. Rankin,* 102 Conn. 46, 127 A. 916 (1925); *Floyd v. State,* 90 So. 2d 105 (1956); *People v. Catalano,* 29 Ill. 2d 197, 193 N.E.2d 797 (1963); *State v. Kavanaugh,* 203 La. 1, 13 So. 2d 366 (1943); *Newton v. State,* 211 Miss. 644, 52 So. 2d 488 (1951); *Sutton v. State,* 163 Neb. 524, 80 N.W.2d 475 (1957); *State v. Coble,* 118 Ohio App. 258, 194 N.E.2d 64 (1962); *Staley v. State,* 65 Okla. Crim. 227, 84 P. 2d 813 (1938); *Staten v. State, supra.* See also Annot., 46 A.L.R.2d 919 (1956). The American Bar Association's "Standards Relating To Trial By Jury," Approved Draft (1968) adopt the rule of the cases, noting that no good reason exists to allow an accused complete power to withdraw his waiver since the exercise of such a power could often result in delay or inconvenience. Section 1.2 (c) of the ABA Standards provides: "[a] defendant may not withdraw a voluntary and knowing waiver as a matter of right, but the court, in its discretion, may permit withdrawal prior to commencement of the trial." Consistent with this standard, Maryland Rule 741 (*supra,* footnote 2) allows the court, "in its discretion, and for good cause shown, at any time prior to the trial [to] permit the accused to change his election." It seems generally accepted that withdrawal of a waiver of the

right to be tried by a jury should be permitted where it is shown that no unreasonable trial delay would result and that the course of justice would not be impeded. In *State v. Rankin, supra,* the Connecticut court stated that the discretion exercised by the trial judge in considering a request to withdraw a jury trial waiver must be reasonable in light of the circumstances, and "[i]f the application for such withdrawal be made seasonably; that is, so that the withdrawal will not unreasonably delay the cause, or impede justice, or otherwise prejudice the state — the court should permit it." 127 A. 916, at 917. To the same effect, *see, People v. Melton, supra; Cain v. State,* 102 Ga. 610, 29 S. E. 426 (1897); *Butler v. State,* 97 Ga. 404, 23 S. E. 822 (1896); *Wilson v. State,* 60 Ga. App. 641, 4 S.E.2d 688; *State v. Touchett,* 33 La. Ann. 1154 (1881); *State v. Kavanaugh, supra.* In *People v. Catalano, supra,* the court said that whether a motion to withdraw a waiver of a jury trial was timely made depended upon whether it was made at a time when the granting thereof would result in delay of the trial, would impede justice, prejudice the state, or inconvenience witnesses. In *Floyd v. State, supra* at 106, the court said that ". . . the fundamental . . . right of trial by jury will best be protected . . . if the withdrawal of the waiver to such a trial is refused by a court only when it is not seasonably made in good faith, or is made to obtain a delay, or it appears that some real harm will be done to the public, *i.e.,* the State, such as unreasonable delay or interruption of the administration of justice, real inconvenience to the court and the State, or that additional expense to the State will be occasioned thereby."

In the circumstances of this case, we think Judge Liss did not abuse the discretion vested in him when he concluded, in effect, that the element of "good cause" required by Rule 741 to permit Jones to change his election had not been shown. The record amply supports Judge Liss' conclusion that Jones was not acting in good faith, but rather was seeking to manipulate the judicial system by discharging one jury, admittedly not to his liking, and replacing it with another jury in order, as Jones himself put it, "to get down to the ones I want to judge this case." In addition, Jones' frequent

requests for trial postponements, his alleged last minute need for additional time to locate a witness, his sudden announcement of dissatisfaction with his attorney when he was brought to trial, his request for extended additional time to employ his own lawyer, and his failure to do so, evidence a tactic of manipulation and delay. Also, of significance, is the fact that Jones, represented by new court-appointed counsel as of July 15, 1971, did not seek to withdraw his prior waiver of a jury trial until December 6, 1971, the day of trial. That a "modicum of doubt" may have existed, as found by the Court of Special Appeals, concerning Jones' understanding of the jury selection process does not, of itself, merit a determination that Judge Liss abused his discretion in not permitting the waiver to be withdrawn. Neither does the fact that a jury may have been available on the day of trial to hear Jones' case supply the requisite "good cause" under Rule 741 *per se* justifying a change in the election and condemning, as an abuse of discretion, the refusal of the trial judge to permit the change. Nothing in the record before us indicates, one way or the other, whether a jury panel was reasonably available to hear the Jones case when it came on for trial in that Part of the multi-judge Criminal Court of Baltimore to which it, along with other cases for that day, had been assigned for trial, pre-scheduled as non-jury matter. The efficient assignment of criminal cases for trial is a highly complex task, particularly in the Criminal Court of Baltimore, with its numerous Parts and endless stream of cases; and where, as here, a jury trial has been waived in that court, and a court trial elected and set for a particular day, it by no means necessarily follows that a jury may be readily impanelled on that day, at least without doing substantial harm to the orderly scheduling and trial of cases which the criminal assignment process is designed to promote. Whether intentional or not, we think it apparent that delay of trial can be caused, and justice can be impeded, by last minute motions to withdraw a jury trial waiver. For purposes of determining whether "good cause" under Rule 741 has been shown to permit the requested change in election, the trial judge should consider, among other things,

the reason expressed for making the request, when the request is made in relation to the time of trial, the lapse of time between the election and the requested change, whether there has been a change of counsel, whether the motion is made in good faith and not to obtain delay, whether the granting of the motion would unreasonably delay trial, impede the cause of justice or the orderly administration of the courts, prejudice the State's case, or unreasonably inconvenience witnesses. Within this framework, the trial judge is vested with wide discretion in deciding whether to permit the requested change in election. Since we are no more enamored of Jones' thinly veiled tactics in seeking to delay trial and manipulate the criminal process than were Judge Liss and Judge Moylan, we conclude that the Court of Special Appeals was wrong in holding that Judge Liss abused his discretion in not finding that Jones had shown "good cause" under Rule 741 justifying the withdrawal of his jury trial waiver.

> *Judgment of the Court of Special Appeals reversed; case remanded for entry by the Court of Special Appeals of a judgment of affirmance of the judgment of the Criminal Court of Baltimore.*