EUGENE HUGH MATHIAS *v.* STATE OF MARYLAND

[No. 860, September Term, 1977.]

*Decided April 17, 1978.*

The cause was argued before THOMPSON, LOWE and COUCH, JJ.

*Claude L. Callegary* for appellant.

*Michael A. Anselmi, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Edwin H. W. Harlan, Jr., State's Attorney for Harford County,* and *Peter C. Cobb, Assistant State's Attorney for Harford County,* on the brief, for appellee.

COUCH, J., delivered the opinion of the Court. LOWE, J., dissents and filed a dissenting opinion at page 294 *infra.*

Following a court trial in the Circuit Court for Harford County (Higinbothom, J.), appellant, Eugene Hugh Mathias, was found guilty of distribution of a controlled dangerous substance and conspiracy to distribute a controlled dangerous

substance; he was sentenced to four years incarceration on the former and three years concurrent on the latter. From these convictions he appeals, claiming the trial court erred in refusing to allow him to withdraw his previous waiver of a jury trial and forcing him to be tried by the court.

Appellant and a co-defendant were indicted on four counts of violating the Controlled Dangerous Substance laws of the State. Appellant was arraigned on October 5, 1976, at which time he pled not guilty and elected a court trial (he does not contend here that his waiver of a jury trial was anything but voluntary and intelligent). The court trial was set for June 9, 1977, but was postponed, at appellant's request, until June 29, 1977. On the morning of trial appellant, through his attorney, sought leave to change his trial election and to be tried by a jury. At the hearing on the motion it developed that early the previous week the State's Attorney's office notified appellant's attorney that the co-defendant was pleading (apparently guilty) to two counts of the indictment. It was further stated that it was not until the morning of trial that appellant's attorney talked to the attorney for the co-defendant and learned that the co-defendant was going to testify for the State and how deeply prejudicial this testimony was. The State opposed appellant's motion on the ground that no jury was available, that trial would have to be delayed from six to eight weeks, and that the State had brought a former police witness in from Pittsburgh (and thus already incurred certain expenses). We note that, at the motion hearing, appellant's counsel stated that perhaps they could stipulate to what the out-of-state witness's testimony would be. The court felt that appellant had not shown good cause, that there would be inconvenience to the out-of-state witness and expense to the State, and, consequently, denied appellant's request. The ensuing trial resulted in appellant's conviction.

It goes without saying that one charged with a criminal offense may elect to be tried by a jury. Maryland Declaration of Rights, Article 5; Sixth Amendment to the United States Constitution. It is also true that a defendant, in a criminal case, may waive his right to a jury trial. *State v. Zimmerman,* 261 Md. 11, 273 A. 2d 156 (1971). Further, it is clear that a

defendant's election to be tried by the court may be withdrawn. Maryland Rules of Procedure 741 (now 735) provides in part, "The court may, in its discretion and for good cause shown, at any time prior to the trial permit the accused to change his election." Thus our review here is limited to a determination of whether the trial judge abused his discretion in denying appellant's request for a jury trial, made on the morning of trial, which trial had been scheduled for some eight months.

Chief Judge Murphy, speaking for the Court of Appeals in *State v. Jones,* 270 Md. 388, 395, 396, 312 A. 2d 281 (1973), stated:

> "For purposes of determining whether 'good cause' under Rule 741 has been shown to permit the requested change in election, the trial judge should consider, among other things, the reason expressed for making the request, when the request is made in relation to the time of trial, the lapse of time between the election and the requested change, whether there has been a change of counsel, whether the motion is made in good faith and not to obtain delay, whether the granting of the motion would unreasonably delay trial, impede the cause of justice or the orderly administration of the courts, prejudice the State's case, or unreasonably inconvenience witnesses. Within this framework, the trial judge is vested with wide discretion in deciding whether to permit the requested change in election."

Applying these standards to the instant case, we are not persuaded that the trial court abused its discretion in denying appellant's request. Certainly there was inconvenience to the State and to the out-of-state witness, there had been a week's notice of the change of position of the co-defendant, there was interruption of the orderly administration of the court, and no prejudice to appellant was shown. We note, in this latter respect, that the trial judge stated:

> "The court is not going to determine a case on whether or not the co-defendant pleaded guilty. The

court is going to determine the case on evidence as it's presented to it and argument by counsel as to the law so I can't see first why or in what manner Mr. Mathias can be prejudiced by that fact."

*Judgments affirmed.*
*Appellant to pay costs.*

*Lowe, J., dissenting:*

*State v. Jones,* 270 Md. 388, relied upon by the majority, turned upon facts clearly indicating that Jones had manipulated the system for purposes of delay. He had originally exercised his right to a jury trial but being unhappy with the jury selected, had, on the day of trial, waived the jury for a court trial, then obtained an immediate postponement followed by another subsequently granted. When again he came to trial, he chose that moment to fire his court appointed counsel on grounds relating to the attorney's selection of the original jury rejected two months previously. Following several delays encompassing over seven months thereafter, Jones was finally called to trial with his new attorney, and at this juncture asked for a jury trial and to withdraw his former waiver.

The Court of Appeals, quoting out-of-State cases with approval, gave every indication that a court "should permit" application for withdrawal of a waiver when "seasonably made" if "good cause" is shown under Md. Rule 741 (now Rule 735). It was apparent there, however, that Jones neither had good cause nor had he seasonably applied.

— good cause —

Upon learning on the day of trial that his codefendant was trading his own freedom for testimony prejudicial to appellant, appellant Mathias acted precipitously to withdraw his waiver and exercise his constitutional right to have a jury of twelve of his peers weigh the suspect testimony (arguably purchased with judicial leniency by the prosecutor), rather than have such testimony weighed by a single jurist whose

very role may have hardened him to the plea bargain procedure. If such a reason does not constitute "good cause" to withdraw a jury waiver, as the majority described "good cause" in its quote from *State v. Jones,* 270 Md. 388, 395-396, I am at a loss to determine what would fulfill the definition.[1]

— seasonable application —

Although the week before trial appellant may have suspected that his codefendant's guilty plea was the result of a plea bargain which would enure to appellant's detriment, he is hardly chargeable with that knowledge, especially in light of the fact that the codefendant could not be compelled to testify until his own judgment was final. *McClain v. State,* 10 Md. App. 106, 114, *cert. denied,* 259 Md. 733. Although appellant's counsel was notified the week previous to trial that the codefendant would plead guilty, there is no evidence that appellant, or his counsel, was advised that the codefendant would testify voluntarily against appellant. Thus, on the day appellant became aware of the underlying cause for his need for the jury, he sought it promptly. That was certainly a "seasonable" application.[2]

— impede justice, unreasonable delay, prejudice to the State —

But seasonable application to withdraw the waiver, even coupled with good cause, may not be enough. *Jones* tells us that whether the motion was made "timely" depended upon whether it was made at a time when the granting thereof would result in a delay of trial, impede justice, prejudice the State, or inconvenience witnesses. *Id.* at 394. As pointed out by the majority, the State argued that a six to eight week

---

1. To agree with appellant that bargained testimony may be more acidulously viewed by laymen than by judges is not to question judicial integrity. It simply acknowledges that judges are used to such "deals" — perhaps too used to them. Added to that is appellant's numerical chance of having such testimony leave a bitter taste with the factfinder; a jury trial increases that possibility from one to twelve over a court trial.

2. Even if we charged appellant with the duty to inquire immediately as to the extent of his codefendant's plea bargain upon being told of his sudden change of plea, I would be hard pressed to hold that a lapse of one week made the application untimely.

delay would be required and presumably that this was unreasonable. It further contended that it was prejudiced by the expense of bringing a witness to testify from his present home in Pittsburgh and that this witness — a former police officer — would be inconvenienced by a second day's journey.

The question is whether these are inordinate rather than expected impediments following a continuance. Is a six to eight week delay "unreasonable" where the State has shown no need for extraordinary expedition? Is justice impeded by a second State-paid carfare from Pittsburgh to Harford County? If so, it should be noted that appellant qualifiedly offered to stipulate that witness's testimony if given his right to jury trial. This offer was presumably not considered, explored or mentioned by the trial judge when he denied the jury trial.

Too often our system is in such a hurry that its primary purpose is blurred by desire for unnecessary expedition and judicial convenience. Justice and fair play are by far more compelling considerations — certainly more so than the not unreasonable inconvenience of a single witness, or the hardly inordinate State's expense required to bring that witness back from his present Pittsburgh home.

The Court of Appeals, in *Jones,* recognized that the Rule 741 discretion was not absolute, and should be liberally granted (" '. . . the court should permit it.' ") and restrictively withheld:

> " ' . . . the fundamental . . . right of trial by jury will best be protected . . . if the withdrawal of the waiver to such a trial is refused by a court *only* when it is not seasonably made in good faith, or is made to obtain a delay, or it appears that some *real* harm will be done to the public, *i.e.,* the State, such as unreasonable delay or interruption of the administration of justice, *real* inconvenience to the court and the State, or that additional expense to the State will be occasioned thereby.' " (emphasis added). *Jones, supra,* at 394, quoting *Floyd v. State,* 90 So. 2d 105, 106.

Clearly in this case application to withdraw was made as soon as the cause was manifest, despite it having been a "last minute motion". If *Jones* is interpreted to permit denial of all withdrawal applications made on the date of trial, regardless of good cause or seasonableness vis-à-vis the knowledge of that cause, the remaining high-sounding intonations of justice, couched in obligatory verbs and adjectival imperatives, is reduced to a mouthing of platitudes. *Jones* obviously means more than that.

Finally, in regard to the "prejudice" to appellant, the majority points out that the trial judge assured appellant that he would decide the case solely on the law and the evidence, and not determine his guilt on "whether or not the co-defendant pleaded guilty." Despite our self-serving assurances to the public from time to time that judges are superior beings with a "multitude of admirable qualities" and thus not liable to human frailties, *Williamson v. State*, 25 Md. App. 338, 341, we who have taken the cloth are hardly reassured. The fact that the judge felt compelled to volunteer such an assurance indicates that he was at least subconsciously influenced by the very thing he disclaimed. If bias or prejudice were truly dissipated simply by stating — or even believing — that one is not prejudiced, we would have had no need for judicial or legislative efforts to proclaim and enforce equal treatment. I have met but very few prejudiced people who recognized their prejudice — even among judges.

I must respectfully dissent.