# EUGENE HUGH MATHIAS *v.* STATE OF MARYLAND

[No. 26, September Term, 1978.]

*Decided November 17, 1978.*

*Claude L. Callegary* for appellant.

*Michael A. Anselmi, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court. ELDRIDGE and COLE, JJ., dissent and COLE, J., filed a dissenting opinion in which ELDRIDGE, J., concurs at page 35 *infra.*

We shall here hold that a trial judge did not abuse his discretion when he denied the request of an accused on the morning of trial to change his election of a court trial to that of a jury trial.

In a court trial in the Circuit Court for Harford County appellant, Eugene Hugh Mathias (Mathias), was convicted of distribution of a controlled dangerous substance and conspiracy to distribute such substances. A divided panel of the Court of Special Appeals affirmed the conviction in *Mathias v. State,* 39 Md. App. 291, 384 A. 2d 482 (1978). We granted the writ of certiorari in order that we might consider the issue here presented.

For purposes of the case before us, the facts are relatively simple. Mathias and a codefendant were arraigned on October 5, 1976. At that time Mathias entered a plea of not guilty and elected to be tried by the court. Trial originally was scheduled for June 9, 1977. It was postponed to June 29, 1977, because of the trial schedule of Mathias' attorney. When the case was called for trial on June 29 counsel for Mathias advised the court that Mathias "wish[ed] to elect not a court trial but a jury trial . . . ." He then proceeded to set forth the reasons for the request:

> "[I]t was early of last week that we were notified by the State's Attorney's Office, by Mr. Coleman that the codefendant in this case was pleading to two counts of the indictment.[1] At the time of the original arraignment both defendants pleaded not guilty and elected to be tried by the court. After notifying my client of that situation and the fact that the codefendant Deal would be a witness against him, Mr. Mathias then requested me to request the

1. It thus is worthy of note that June 29, 1977, was a Wednesday. Therefore, if it were "early [in the previous] week" that counsel for Mathias knew that the codefendant was pleading guilty, then it follows that this was more than a week before the trial date since Wednesday presumably would be regarded as in the middle of the week.

> court to withdraw his waiver of jury trial and to request a jury trial on the basis that the testimony of the codefendant is so totally prejudicial to his rights and could be entirely disregarded by a jury, that of this codefendant and in spite of [*State v. Jones,*] 270 Md. 388, [312 A. 2d 281 (1973),] the court has discretion to change the waiver of a jury trial to a jury trial and that discretion of the court can go in both directions. We are now requesting that the court withdraw the waiver and that we be allowed to have a jury trial. I understand that there is some question of a witness and perhaps we could stipulate to that one witness who I understand is from out of town, what his testimony would be."

Counsel for Mathias said that it was not until the morning of trial that he "finally learned the extent of the codefendant's testimony . . . and how deeply prejudicial it [might be] . . . ."

The State opposed the motion, pointing out that there had been no indication prior to the morning of trial that there would be a prayer for a jury trial, that the clerk "ha[d] prepared the case on the assumption there would be no jury so there [was], in fact, no jury present and available for the court to select a jury th[at] morning and that permitting [Mathias] to have a jury trial would mean a delay." The State contended that this change in election would mean postponement for six to eight weeks. It was observed that had Mathias "given even a day or two notice" arrangements could have been made to have a jury present that day. (Harford County is not sufficiently populous and does not have sufficient litigation for there to be a jury in the courthouse every day of the week.) The State also pointed out that it had brought a former police officer in from Pittsburgh as a witness.

In denying the request, the trial judge referred to *State v. Jones,* 270 Md. 388, 312 A. 2d 281 (1973). He said:

> "Now, when you consider the various facts, one is the very late request for the change, I mean, even a day or two and certainly I believe Mr. Callegary

[(counsel for Mathias)], you were aware of it by the end of last week that a codefendant was going to plead guilty and even if then if you had requested a jury trial the clerk could have had one available. So, the original plea was months ago, of course, the facts were a little bit different and in addition to that the State has a witness coming from Pittsburgh who the State has paid the expenses and those expenses have already been incurred and it's not a certainty that this witness would be available if the case is taken out of the assignment and if the jury trial was granted. It would necessitate taking the case out of the assignment. It would not be heard for six to eight weeks from now and it would certainly be an inconvenience for this witness to come here from Pittsburgh and possibly be required to have to return.

"So, I don't doubt that the motion is made in good faith, Mr. Callegary, certainly I don't have any doubt on that score but I think when you weigh all of the factors that are supposed to be considered, that exercise of discretion in this case would be best exercised by denying the motion and proceeding with the court trial because frankly the court can't see there is any real prejudice to Mr. Mathias. So, I will deny the motion."

Since this case was tried prior to July 1, 1977, then Maryland Rule 741 was applicable.[2] It states:

"An accused may elect to be tried by jury or by the court. Such election shall be made by the accused

---

2. Our Standing Committee on Rules of Practice and Procedure submitted its 53rd Report to us under date of December 30, 1975. *See* 3: 1 *Md. Register* 8-39 (January 7, 1976), which recommended extensive revision of the rules applicable to criminal cases. On January 31, 1977, we passed an order adopting the new rules effective July 1, 1977. *See* 4: 4 *Md. Register* 235-275 (February 16, 1977). Maryland Rule 735 is currently applicable to election of court or jury trial. Under it the election must "be in writing, signed by the defendant, witnessed by his counsel, if any, and filed with the clerk of the court in which the case is pending." Rule 735 a provides in pertinent part, "After an election has been filed, the court may not permit the defendant to change his election except upon motion made prior to trial and for good

in open court when first called upon to plead after he is represented by counsel of record or has waived counsel. If an accused elects to be tried by the court, the State may not elect a jury trial. The court may, *in its discretion* and for good cause shown, at any time prior to the trial permit the accused to change his election." (Emphasis added.)

There is not the slightest suggestion that the trial judge in this case was in any way biased against Mathias. The parties here concede, as indeed they must after our holding in *Jones,* that the action of the trial court here is to be reviewed upon the basis of whether it was an abuse of discretion. Chief Judge Murphy pointed out for the Court in *Jones,* 270 Md. at 393, "Under the prevailing rule an accused has no absolute right to withdraw his waiver of a jury trial; whether it will be permitted is a matter committed to the sound discretion of the trial court." He cited a number of cases in support of this proposition together with Annot. 46 A.L.R.2d 919 (1956). To this could be added *State v. Lawrence,* 216 Kan. 27, 530 P. 2d 1232 (1975), decided subsequent to *Jones* with facts closely approximating those in this case; 3 C. Torcia, *Wharton's Criminal Procedure* § 437 (1975); 47 Am. Jur.2d, *Jury,* § 70 (1969); and 50 C.J.S. *Juries* § 111 at 825 (1947). *Accord, Staten v. State,* 13 Md. App. 425, 283 A. 2d 644 (1971); *Cole v. State,* 12 Md. App. 379, 277 A. 2d 248 (1971); and *Walter v. State,* 4 Md. App. 373, 243 A. 2d 626 (1968). L. Orfield, *Criminal Procedure From Arrest to Appeal* (1947), in discussing waiver of jury trial, comments at 394-95, "It seems sound to leave the matter [of withdrawal of a waiver] in the discretion of the courts, subject to such rules for applying that discretion as the courts may develop."

Precisely what is meant by an abuse of discretion seems not to have been articulated by this Court. However, some bench marks are to be found. For example, in *Washington, B. & A. R. R. v. Kimmey,* 141 Md. 243, 250, 118 A. 648 (1922),

cause shown. In determining whether to allow a change in election, the court shall give due regard to the extent, if any, to which trial would be delayed by the change."

relative to the discretion to be exercised in considering a motion for a new trial, Judge Urner said for our predecessors, "A discretion could not be characterized as sound which wholly disregarded evidence by which its exercise should have been aided." In *Horton v. Horton,* 157 Md. 127, 133, 145 A. 355 (1929), concerning the discretion of orphans' courts in the case of intestacy to grant letters to a child or to the husband or widow, as the case might be, the Court said, "[I]t means that the court shall actually exercise a discretion, and that it shall make its choice after considering the relative merits and fitness of the applicants, and their respective claims to consideration, and not that it may act without regard to such consideration, solely at its pleasure or caprice." In *Lee v. State,* 161 Md. 430, 157 A. 723 (1931), Chief Judge Bond said for the Court:

> "The meaning of discretionary power in a trial court, and the rules governing review of discretionary orders on appeal, have often been stated in vague, loose terms which furnish no exact guidance; but for the purposes of this case it seems to us sufficient to observe only that the judgment and discretion must be exercised in solving the exact problem of the law, upon all the considerations which properly enter into the problem, and form it. For instance, the discretion being for the solution of the problem arising from the circumstances of each case as it is presented, it has been held that the court could not dispose of all cases alike by a previous general rule. *Union Bank v. Ridgely,* 1 H. & G. 324, 407 [(1827)]." *Id.* at 441.

In *Jones v. State,* 185 Md. 481, 489, 45 A. 2d 350 (1946), the Court held that "the exercise of discretion" might "be reviewed if exercised in a harsh, unjust, capricious and arbitrary way." Much more recently Judge O'Donnell said for the Court in *Wilhelm v. State,* 272 Md. 404, 326 A. 2d 707 (1974):

"Lord Halsbury, L. C., in *Sharp v. Wakefield* [1891] A. C. 173, 179, said:

> ' "Discretion" means when it is said that something is to be done within the discretion of the authorities that that something is to be done according to the rules of reason and justice, not according to private opinion; according to law, and not humour. It is to be, not arbitrary, vague, and fanciful, but legal and regular. And it must be exercised within the limit, to which an honest man competent to the discharge of his office ought to confine himself.' " *Id.* at 438.

We have recognized in other matters that since discretionary rulings by trial judges carry a presumption of validity, the burden of establishing an abuse of discretion in a particular case lies with the appellant. *I. W. Berman Prop. v. Porter Brothers,* 276 Md. 1, 13-14, 344 A. 2d 65 (1975); *Franceschina v. Hope,* 267 Md. 632, 636-37, 298 A. 2d 400 (1973); and *Stickell v. City of Baltimore,* 252 Md. 464, 471, 250 A. 2d 541 (1969). In *Northwest'n Nat. Ins. Co. v. Rosoff,* 195 Md. 421, 436, 73 A. 2d 461 (1950), Chief Judge Marbury observed for our predecessors that discretionary rulings "should only be disturbed where it is apparent that some serious error or abuse of discretion or autocratic action has occurred."

In *Jones* Chief Judge Murphy referred to the American Bar Association's "Standards Relating to Trial by Jury," Approved Draft (1968), § 1.2 (c) of which provides, "A defendant may not withdraw a voluntary and knowing waiver [of trial by jury] as a matter of right, but the court, in its discretion, may permit withdrawal prior to the commencement of the trial." The commentary accompanying that standard is instructive. It states:

> "In a few jurisdictions the defendant may withdraw his waiver of jury trial at any time before the trial. Orfield, Criminal Procedure From Arrest

to Appeal 394 (1947). However, the prevailing view, adopted in the standard, is that the withdrawal of a voluntary and knowing waiver of trial by jury lies in the discretion of the court. Annot., 46 A.L.R.2d 919 (1956). The minority view has been rejected because no good reason for allowing the defendant complete power to withdraw his waiver has been found, while it is apparent that the exercise of such power could often result in delay and inconvenience.

"The standard limits withdrawal with consent of the court to the time prior to the commencement of trial; the cases agree that a motion made after the trial is under way is not timely. *Id.* at 922. The standard also indicates that whether withdrawal should be allowed rests with the discretion of the court. In this regard, it should be noted that a number of cases have held that withdrawal should not be allowed if the result would be an unreasonable delay in the trial. *Ibid.*" *Id.* at 39-40.

Although Mathias wishes to distinguish this case from the *facts* of *Jones* where there was an apparent attempt on the part of Jones to delay the trial, the *law* cited in *Jones* is fully applicable. We shall evaluate the facts here against that law. In *Jones* Chief Judge Murphy said for the Court:

"Whether intentional or not, we think it apparent that delay of trial can be caused, and justice can be impeded, by last minute motions to withdraw a jury trial waiver. For purposes of determining whether 'good cause' under Rule 741 has been shown to permit the requested change in election, the trial judge should consider, among other things, the reason expressed for making the request, when the request is made in relation to the time of trial, the lapse of time between the election and the requested change, whether there has been a change of counsel, whether the motion is made in good faith and not to obtain delay, whether the granting of the motion would unreasonably delay trial, impede the cause of

justice or the orderly administration of the courts, prejudice the State's case, or unreasonably inconvenience witnesses. Within this framework, the trial judge is vested with wide discretion in deciding whether to permit the requested change in election." *Id.* at 395-96.

In our evaluation we put aside *Dorsey v. State,* 276 Md. 638, 350 A. 2d 665 (1976), which is cited by Mathias with the argument that "even if prejudice is a factor it is clear that the State has the burden to demonstrate beyond a reasonable doubt that the error did not contribute to the result." This argument stems from the statement of the trial judge, quoted by the Court of Special Appeals, 39 Md. App. at 293-94:

"The court is not going to determine a case on whether or not the co[-]defendant pleaded guilty. The court is going to determine the case on evidence as it's presented to it and argument by counsel as to the law so I can't see first why or in what manner Mr. Mathias can be prejudiced by that fact."

*Dorsey* is inapposite. It had to do with the standard to be applied in determining whether error was harmless error, error having been found. Here the issue is whether the trial judge has fairly acted in a matter within his sound discretion, hence whether there is any error.

It should be borne in mind that whenever there are codefendants in a case there always is a possibility that on the very morning of trial one of those codefendants will change his mind because of stage fright or some other reason and determine to plead guilty, possibly accepting a proposition for a plea bargain previously made by the State. To hold that whenever this takes place and such a codefendant is then going to testify against another codefendant or codefendants such individuals are automatically entitled to change their prior election of a court trial would make a shambles of trial assignments and court administration. It also should be borne in mind that one of the subjects on which the general public severely criticizes lawyers and courts is when they are called to appear as

witnesses at a trial and then are sent home to return at a later date.

The State was concerned because it had a witness from out of state who had been brought to the trial at considerable expense to the State. It is true that Mathias offered to stipulate as to the testimony of that witness in the event of a later trial. But there is a difference between personal testimony of a witness in court where the trier of fact may consider the demeanor of the witness in determining credibility and a stipulation that a witness would testify as to certain facts. This is well illustrated by our having pointed out in divorce cases that "the latter portion of Rule 886 [, relative to the opportunity of a trial court to judge the credibility of the witnesses,] is not applicable where the testimony was heard before a court examiner, for the simple reason that the judge did not have the opportunity to observe the witnesses and thus to weigh their credibility." *Bartell v. Bartell,* 278 Md. 12, 23, 357 A. 2d 343 (1976), and cases there cited. It is to be noted that there was no suggestion that the stipulation would include that such testimony was true.

Given the fact that defense counsel had known for about a week that the codefendant was going to plead guilty and thus might well have anticipated that he might testify for the State, the inconvenience to the State's witness from Pittsburgh, the fact that a jury was not available in the Harford County courthouse on the day in question, that permitting the change would have meant postponement of the case for six to eight weeks, and the indication by the trial judge that had the court had notice of even a day or two of the desire to change the mode of trial a jury could have been provided, we find no abuse of discretion on the part of the trial judge.

> *Judgment affirmed; appellant to pay the costs.*

*Cole, J., dissenting* :

This Court holds today that the trial court did not abuse its

discretion in denying Mathias' motion to withdraw his waiver of a jury trial. I disagree and respectfully dissent.

I do not argue with the principle that the final determination of such an issue is left to the sound discretion of the trial judge. *See* cases cited in *State v. Jones,* 270 Md. 388, 393, 312 A. 2d 281 (1973). Nor do I quarrel with our prior holdings which saddle the burden to prove arbitrariness upon him who attacks such exercise of discretion. *Franceschina v. Hope,* 267 Md. 633, 298 A. 2d 400 (1973). *See I. W. Berman Prop. v. Porter Bros.,* 276 Md. 1, 344 A. 2d 65 (1975); *Stickell v. City of Baltimore,* 252 Md. 464, 250 A. 2d 541 (1969). However, it seems to me that when the movant has demonstrated good and sufficient cause to the trial court for changing his election as to the mode of trial he has met his burden and failure to grant the motion is abusive.

The majority relies upon *State v. Jones, supra,* as authority for its holding. I agree that the law of *Jones* is controlling but it is clear to me that that law is misapplied here because *Jones* is factually inapposite.

Jones was a veteran of criminal conduct having been previously convicted on a number of occasions and on parole when the armed robbery for which he was charged was committed. On March 20, 1971 he successfully aborted the first attempt to try him by claiming, after the jury was selected, that he didn't like the jury and was not advised of the proper procedure for selecting a jury. When trial was reset for April 5, 1971, he elected a court trial after being thoroughly advised that such election would mean waiver of his right to be tried by a jury. He also requested postponement to procure an essential witness. On April 26, 1971, Jones again appeared in court and requested a further postponement to obtain the attendance of the same witness. On May 20, 1971 Jones returned to court declaring his attorney was incompetent and succeeded in persuading the trial court to postpone his trial until another lawyer was appointed. Trial was rescheduled before Judge Liss in December, 1971 and Jones requested that he be allowed to withdraw his waiver of jury trial. Judge Liss denied his request. We reversed the Court of Special Appeals (Moylan,

J., dissenting) and ultimately affirmed the action of the trial judge. Chief Judge Murphy in rendering the opinion of the Court said:

> The record amply supports Judge Liss' conclusion that Jones was not acting in good faith, but rather was seeking to manipulate the judicial system by discharging one jury, admittedly not to his liking, and replacing it with another jury in order, as Jones himself put it, 'to get down to the ones I want to judge this case.' In addition, Jones' frequent requests for trial postponements, his alleged last minute need for additional time to locate a witness, his sudden announcement of dissatisfaction with his attorney when he was brought to trial, his request for extended additional time to employ his own lawyer, and his failure to do so, evidence a tactic of manipulation and delay. Also, of significance, is the fact that Jones, represented by new court-appointed counsel as of July 15, 1971, did not seek to withdraw his prior waiver of a jury trial until December 6, 1971, the day of trial. *Id.* at 394-95.

Jones sought by whatever means available to avoid being tried at all.

In the case sub judice, Mathias appeared in court with counsel on October 5, 1976 for arraignment when he entered a plea of not guilty and elected a court trial. From that date until the day of trial, Mathias did not appear in court to seek a postponement nor did he in any other way attempt to forestall his pending prosecution. The State selected the time of trial as June 29, 1977 and Mathias appeared with counsel ready for trial on that day or any other day except that he requested to be tried by jury. He gave as his reason for seeking to withdraw his waiver of jury trial that a vital change in the nature of the evidence to be presented against him (which he had discovered within a week of the trial date and confirmed on the morning of trial) convinced him that his best opportunity to prove his innocence was before a jury. He had learned that his co-defendant had made a deal with the

State and had, therefore, agreed to testify as the principal witness against him. This reduced the trial issue to whether the fact-finder believed him or his co-defendant. Mathias presented this matter to the court at his first opportune time. The State's Attorney contends that Mathias or his counsel should have notified him prior to trial but the real issue is whether Mathias acted reasonably under all the circumstances not whether he might have done something differently.

The State opposed Mathias' motion on the grounds that no jury was available, that trial would necessarily be delayed from six to eight weeks and that the State had already brought a witness from Pittsburgh at its expense. Mathias suggested that he would stipulate to the testimony of the out of state witness, thereby saving the State any further expense.

The trial judge conceded that Mathias' motion was made in good faith, thus implying that he was not attempting to avoid trial. Nevertheless, the court ruled that granting the motion would result in inconvenience to the out of state witness, considerable expense to the State and substantial delay in the proceedings.

It is to be noted that the record does not reveal that the trial court made any inquiry of the out of state witness as to any inconvenience he would suffer if he were required to return. It is equally important to note that the out of state witness testified that he could arrange to come back to Maryland as a witness and indicated no apparent inconvenience. That the out of state witness would be inconvenienced and the State would incur considerable expense was presumed, rather than deduced from the evidence, by the trial judge seems clear from the record. Certainly, the cost of transportation from Pittsburgh to Harford County would have been no basis to justify the trial court's ruling. In any event, the testimony of this witness was only cumulative and Mathias' offer to stipulate to his testimony, thereby waiving his right of cross-examination, outweighed any argument that the jury would be unable to judge his credibility.

The trial judge also stated that juries are not readily available in Harford County as in more populous counties. However, this fact should not inure to the detriment of this defendant since he moved with dispatch to make known to the court his changed circumstance. The question was whether such a delay was reasonable. This case could just as easily have been tried six to eight weeks later by a jury.

Rather than consider these factors, the trial court merely dismissed them by concluding that Mathias would suffer no prejudice because the court would not determine his guilt on "whether or not the co-defendant pleaded guilty." Judge Lowe in his dissenting opinion below very aptly observed that the "fact that the judge felt compelled to volunteer such an assurance indicates that he was at least subconsciously influenced by the very thing he disclaimed."

We said in *State v. Jones, supra,* 270 Md. at 394:

> the fundamental ... right of trial by jury will best be protected ... if the withdrawal of the waiver to such a trial is refused by a court *only when it is not seasonably made in good faith, or is made to obtain a delay, or it appears that some real harm will be done to the public....*

Thus, in *State v. Jones, supra,* we did not vest in the trial judge an unbridled discretion in granting or denying a withdrawal of a waiver to a jury trial. We required the trial judge to exercise that discretion soundly, giving due regard to the rights of the defendant upon a showing of good cause. It is manifest from the record that Mathias demonstrated good cause and that the trial judge abused his discretion in denying the relief requested. The majority today invites defendants to pray jury trials in all cases in order to preserve their constitutional right thereto. I can envision no greater impediment to the orderly administration of justice. I, therefore, respectfully dissent.

Judge Eldridge has authorized me to state than he concurs with the views expressed herein.