## ALVIN BERLIN *v.* STATE OF MARYLAND

[No. 159, September Term, 1970.]

*Decided May 24, 1971.*

The cause was argued before MURPHY, C. J., and MOY-LAN and POWERS, JJ.

*Robert C. Heeney,* with whom were *Heeney, McAuliffe & McAuliffe* on the brief, for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *William A. Linthicum, Jr., State's Attorney for Montgomery County,* on the brief, for appellee.

POWERS, J., delivered the opinion of the Court.

Love of money was the root of the evil which resulted in a jury verdict in the Circuit Court for Montgomery County that Alvin Berlin, a registered pharmacist who owns and operates the Olney Drug Store, was guilty on all three counts of an indictment returned against him in October, 1969. He was sentenced by Judge Plummer M. Shearin to a fine and imprisonment on each count. The imprisonment was suspended.

The indictment charged that appellant on July 24, 1969 unlawfully:

1. Sold a narcotic drug, Robitussin, which contained codeine, in violation of Art. 27, § 277.
2. Failed to keep a proper record of the sale, in violation of Art. 27, § 287.
3. Maintained as a common nuisance a store for the purpose of unlawfully selling a narcotic drug, in violation of Art. 27, § 291.[1]

Trooper Joseph Lawrence, Maryland State Police, testified that he was assigned to the Vice-Narcotic Unit, and had been doing undercover investigations into narcotics

---

1. Code sections are referred to as they existed at the time. Acts of 1970, ch. 403 substantially changed the subtitle, but did not affect the prosecution of prior offenses.

violations for about two years. On July 24, 1969, he participated in a conversation in the office of Montgomery County Police with one Emerson Smith and with other police officers, at which a plan was formulated. From there he and Smith went in an "undercover vehicle" to the Olney Drug Store. They went in, and engaged in a conversation with Berlin, who stated to Smith, "You owe me some money from the last time". Lawrence asked how much Smith owed, then paid Berlin $5.00 for Smith, and stated they would like to get some Robitussin A. C. They agreed on a gallon, for which a price of $128.00 was quoted, and were told to return just before closing time. Lawrence asked for something to tide him over, and Berlin gave him ten green tablets. Lawrence, with Smith, returned to the store about 11:00 P.M. He asked appellant if the stuff was ready and was told yes, but to wait for a few minutes.

Appellant checked out the fountain register, and talked to a few people in the store until all had left except one woman Lawrence thought might be Mrs. Berlin. Appellant then came from the rear with a brown unlabeled one-gallon jug, and put it on the floor behind the counter. Lawrence paid appellant $128.00, and then proposed that they do some business together in amphetamines. Appellant told Lawrence to call him on a Wednesday, because he would be working by himself.

Lawrence then identified the gallon jug and the envelope of pills and stated that he had taken them to a chemist in the U. S. Customs Lab. in Baltimore.

Further testimony by Trooper Lawrence described the events of August 27, 1969, when he and other officers went to the Olney Drug Store with a search warrant, and warrants for the arrest of appellant. A record kept at the store, referred to as the Exempt Narcotics Book, was seized at that time and offered in evidence at the trial. The search warrant had been offered, and ruled invalid. The book was admitted as having been seized incident to a lawful arrest. It showed that the sale of Robitussin A. C. to Lawrence had not been entered, as required. The

second count of the indictment was based upon failure to record this sale.

A chemist testified that the liquid in the gallon jug was cough syrup containing codeine, but that he did not determine the proportions. He said that Robitussin (plain) does not contain codeine but that Robitussin A. C. does. From other analyses he thought it was two milligrams per cc. Appellant later testified that Robitussin A. C. has in it one grain of codeine per ounce. The chemist also analyzed the pills and said they were amphetamines.

Appellant testified that he gave Lawrence the 10 pills in good faith, and thought he was doing him a service, and they couldn't hurt him. When he sold the Robitussin he thought it was in good faith. He said, "I have been a druggist for twenty years and this is the only person that ever got to me, trapped me or something, the only person, the only time." Appellant further said that when he sold the jug of Robitussin the Trooper didn't say why he wanted it; appellant didn't know whether it was for himself or for some other reason, had no idea what he was going to do with it, and couldn't say whether there was any indication he was going to re-sell it. He also said, after an objection was overruled, that he had sold amphetamines to Lawrence in July, after the first sale, and in August, for a hundred dollars, a quantity that could have been 1,000 tablets. When he gave the 10 pills on July 24th, Lawrence had no prescription, although one was required.

Thomas J. Kelly, a drug inspector for the State, testified that the Federal Government requires a record in the Exempt Narcotics Book of a sale of Robitussin, which is in Class X. The Code of Federal Regulations, to the same effect, was admitted in evidence.

When the evidence was completed, appellant moved to strike the Exempt Narcotics Book from evidence on the ground that its seizure was unlawful. This motion was denied. Appellant then moved for judgment of acquittal, which was denied. Neither side requested advisory instructions, and the judge gave none.

During argument the State's Attorney apparently made some reference to Emerson Smith, who was mentioned in the testimony of Trooper Lawrence and of appellant, but who did not testify. Appellant objected and moved for a mistrial because of improper remarks. The motion was denied.

Appellant's brief lists nine questions presented. The State argues as to the nine questions, treating them in substantially the same form. We recast them in this form:

A. Did the court err in denying the motion for judgment of acquittal

1. As to Count I, because
   a. Code § 277 does not apply to pharmacists in the regular course of their legitimate professional activities; and
   b. Code § 286 exempts from the subtitle (including § 277) selling at retail any medicinal preparation that contains in one fluid ounce not more than one grain of codeine; and
   c. The penalty in § 300 (a) imposed upon any person who violates § 277 with regard to any narcotic drug specified in § 276 does not apply because codeine is not specified in § 276; and
   d. There was no evidence that the product sold by appellant was Robitussin A. C. as alleged.
2. As to Count II, because
   a. No record of the sale was required to be kept because there was no evidence that the product sold was Robitussin A. C.; and
   b. It was error to admit the Exempt Narcotics Book in evidence because it was unlawfully seized.

3. As to Count III, because
   a. Code § 291, making it unlawful to maintain any store which is used for the illegal selling of narcotic drugs, could not apply to this drug store, which was licensed and authorized to sell drugs; and
   b. The statute contains no definition of common nuisance, and the common law definition involves continuing acts, while the evidence showed only one sale in this case.
4. As to all Counts, because
   a. The State manufactured the crime, if there was one, and appellant was trapped into making the sale; and
   b. There was no evidence that appellant had a predilection to criminal conduct.

B. Did the court err in permitting questions to appellant about transactions subsequent to the offense charged.

C. Did the court err in denying appellant's motion for a mistrial when the State's Attorney, in argument, referred to statements by Emerson Smith, who did not testify.

We conclude that the motion for judgment of acquittal was properly denied as to Count I and as to Count II, but should have been granted as to Count III. We also conclude that the trial court did not err in the other rulings.

### Appellant's Claim of Exemption
### A. 1. a. and b.

Code § 277, prohibiting the sale of any narcotic drug, except as authorized, by its terms provides that it "shall not apply to pharmacists, physicians, dentists and veterinarians in the regular course of their legitimate professional activities". Code § 286 provides that the subtitle shall not apply to selling at retail any medicinal preparation that contains in one fluid ounce not more than one grain of codeine, but further provides that the ex-

emption is subject to the condition that the preparation be sold in good faith as a medicine. Code § 298 provides that the burden of proof of any exception or exemption (under the subtitle) shall be upon the defendant, *Reid v. State*, 10 Md. App. 6, 267 A. 2d 332.

With respect to the sale proved here, we think that *sale in the regular course of legitimate professional activity,* and *sale in good faith as a medicine* are the same thing. The jury was entitled to consider the quantity sold and the price charged; the time of day the sale was arranged and the time carried out; that the sale was not entered in the Exempt Narcotics Book, although it was required to be; that the purchaser of the cough syrup at the same meeting proposed they work together on the sale of pills, and appellant suggested a call on a day when he would be alone; that appellant gave the purchaser 10 amphetamine pills at the same time, "to tide him over", without a prescription although one was required; that over the following month or so appellant made some sales of such pills to the same individual in quantities that may have been 1,000; that no explanation was made of the purpose in buying a gallon of cough syrup, and appellant asked for none. The evidence touching on the question of legitimate professional activity and good faith in the sale required resolution by the jury, *Coolahan v. State*, 10 Md. App. 365, 270 A. 2d 669. The asserted exemptions did not call for a judgment of acquittal.

### Codeine as a Narcotic Drug
#### A. 1. c.

It is specious to contend that codeine is not specified in § 276 as a narcotic drug. § 276 (o) says:

> "(o) 'Narcotic drugs' means coca leaves, opium, cannabis, and every other substance neither chemically nor physically distinguishable from them * * *."

Subsection (m) provides:

> "(m) 'Opium' includes morphine, codeine and heroin * * *."

■■■■■■■■■■

### *The Product Sold was Robitussin with Codeine*
### *A. 1. d. and A. 2. a.*

The evidence showed that Trooper Lawrence asked for Robitussin A. C. at the time of his first conversation with appellant. Appellant asked how much he wanted, and when told a gallon, quoted the price. The jug later handed to Lawrence upon payment of the quoted price was analyzed. The chemist said it was a cough medicine, containing codeine. Appellant testified that plain Robitussin has no codeine in it, but Robitussin A. C. has codeine. The jury could properly find or infer that the substance in the gallon jug sold by the appellant was Robitussin A. C. The judge was correct in denying the motion for judgment of acquittal and allowing the jury to consider the evidence on this point.

### *Admissibility of the Exempt Narcotics Book*
### *A. 2. b.*

Objection made when the Exempt Narcotics Book was offered in evidence was overruled by Judge Shearin, after Trooper Lawrence testified he seized the book in a search incidental to the arrest, which was conceded to be a valid arrest. Trooper Lawrence gave this testimony:

"Q  Where were the articles that you seized?

A  The articles were on the counter.

Q  Where was Dr. Berlin at the time of the arrest?

A  When we entered the drug store he was behind the counter that might be considered the pharmaceutical area.

Q  How far away was he from the articles?

A  They were right in his immediate area. I couldn't give you, approximate in feet or so forth because it wasn't that far. It was just right there.

Q  Well, can you give us some approximation as best you can?

A  Maybe five, ten feet or so.

Q Where were the articles that were seized;
under the counter or on top?
A On top of the counter.
Q Were they in plain view if you look at them?
A Yes, they were.
Q What were the articles that were seized?
A We seized an Exempt Narcotic book * * *."

The scope of a search and seizure that may constitutionally be made under the Fourth Amendment incident to a lawful arrest, but without a search warrant, was examined by the Supreme Court in *Chimel v. State of California*, 395 U. S. 752, 89 S. Ct. 2034 (1969). The effect of *Chimel* on the law as applied by the courts of Maryland was fully discussed in *Scott v. State*, 7 Md. App. 505, 256 A. 2d 384. We think the constitution permits an officer, making a lawful arrest, to seize incident thereto any evidence on the arrestee's person or within the area of his immediate control, in order to prevent its concealment or destruction. The area of immediate control cannot be measured in feet, or by an arm's length, but is to be measured reasonably with respect to the accessibility of the articles and their nature.

We cannot say that Judge Shearin was wrong when he measured the evidence by the rules of *Chimel* and admitted the Exempt Narcotics Book in evidence.

### Common Nuisance
### A. 3. a. and b.

Count III of the indictment charged the maintenance of a common nuisance on or about July 24, 1969. As we have seen, the evidence showed an unlawful sale of a narcotic drug on that day. The characteristics of a common nuisance were fully discussed in *Ward v. State*, 9 Md. App. 583, 267 A. 2d 255, a case which involved glue sniffing in a motel room in Baltimore County. In an opinion written for the Court by Chief Judge Murphy, we said, at page 593:

"We do not think the commission of a single or isolated act of illegal glue sniffing on the

premises would have constituted Room 16 a disorderly house within the meaning of *Beard*. Generally speaking, it must appear that the acts injurious or offensive to the public which constitute the nuisance are recurrent. But there is no particular extent of time prescribed during which the improper practices must continue or recur; each case must be adjudged according to its own circumstances. It is usually deemed sufficient if, when the character of the culpable acts and the circumstances under which they were committed are taken into account, it appears that they were repeated often enough to warrant an inference that the house was kept for the indulgence of such practices. See 24 Am.Jur.2d *ibid.*, Section 7. It has been held sufficient if the acts occur during any substantial period of time as will constitute them a continuing menace, and that repetitions of a disorder on a single day, at least where the place has acquired a character as a disorderly house, or on two days, may be enough to constitute the place a disorderly house."

Since the only evidence received in support of the charge in Count III consisted of one sale, on one specific day, in a licensed pharmacy where, under proper circumstances, the keeping or selling of the narcotic drug would be entirely lawful, we think there was no evidence from which the jury could find a continuing character of the culpable acts, and the motion for judgment of acquittal should have been granted as to Count III.

*Entrapment*
*A. 4. a. and b.*

Appellant urges that if a crime was committed at all, the State manufactured it, and that the State did not carry the burden of proving beyond a reasonable doubt that the accused was ready and willing without persuasion to commit the offense. The weight of the evidence

was for the jury as the trier of the facts. On appellant's motion for judgment of acquittal the trial judge was required to determine only whether there was any legally sufficient evidence. See *Williams v. State*, 5 Md. 450. Our function on appeal is the same.

The Maryland law on the subject of entrapment was discussed fully and explicitly in *Simmons v. State*, 8 Md. App. 355, 259 A. 2d 814, cited and quoted with approval by the Court of Appeals in *Grohman v. State*, 258 Md. 552, 267 A. 2d 193. The facts here raise no questions not fully covered in those cases.

A jury question clearly existed, and counsel were free to argue the law (in the absence of advisory instructions) for simultaneous determination of the facts and the law by the jury.

Denial of the motion for judgment of acquittal on this ground was not error.

*Evidence of Subsequent Transactions*

*B.*

After appellant had testified "this is the only person that ever got to me, trapped me or something, the only time", the State's Attorney asked if he had made other sales to Trooper Lawrence. Objection was made on the ground that evidence of other crimes is not admissible. The judge ruled that other sales were a proper subject of inquiry to show disposition of an accused who has raised the defense of entrapment, and to test his credibility as a witness.

We agree on both grounds, and point out further that such evidence was material to the issue of good faith claimed by appellant in making the sale on which he was charged.

This Court said in *Wethington v. State*, 3 Md. App. 237, at page 240, 238 A. 2d 581:

> "It is well settled that proof which shows or tends to show that the accused is guilty of the commission of other crimes and offenses at other times, even though they are of the same nature

> as the one charged, is incompetent and inadmis-
> sible for the purpose of showing commission of
> the particular crime charged."

We went on to say that the rule is not without excep-
tions, and listed some of them.
Some exceptions are pointed out in 1 Wharton's Criminal
Evidence Supplement, § 242.4, where it is said:

> "In harmony with the general rule of non-
> admissibility of proof of other crimes, it is held
> that in prosecutions for the sale of narcotics,
> where the state charges a particular sale of nar-
> cotics, it is not proper to admit proof of other
> sales, for the purpose of establishing the partic-
> ular sale charged.
>
> In harmony with the recognized exceptions
> to the general rule, evidence of other sales is
> held admissible to show a plan, scheme, or de-
> vice; knowledge or intent; the narcotic charac-
> ter of the substance sold; identity; agency; and
> to rebut the defense of entrapment."

That such evidence may relate to offenses after as well
as before the one on trial was pointed out by Judge
Learned Hand in *United States v. Smith*, 283 F. 2d 760
(1960).

The evidence then developed from appellant was that
on two later occasions he sold amphetamines to Trooper
Lawrence, probably 1,000 tablets. We conclude that the
evidence was admissible for the purposes stated. Any
limitations upon its consideration by the jury could have
been pointed out in advisory instructions, had any been
given, and could have been argued to the jury.

*Motion for Mistrial for Prejudicial Argument*
*by State*

## C.

Arguments of counsel to the jury were not transcribed,
nor is it contended that they should have been tran-

scribed. The record available to us on this point begins with an objection by defense counsel to something said in argument by the State's Attorney, and his motion for a mistrial. The colloquy that followed indicated that there had been a reference to what Emerson Smith, who did not testify, had said or done. Both Trooper Lawrence and appellant had referred to Smith in their testimony, and to his part in the affair. The judge then said:

"Excuse me, the Court will direct the jury to disregard any statement or inference from any statement made by Mr. Linthicum as to what information he had then obtained.

It is perfectly clear for the State to comment upon the other evidence as to what had been done by Emerson Smith, but based upon the Court's recollection and its notes which are apparently at variance with that of the State, the Court would instruct the jury to disregard that portion of Mr. Linthicum's statement.

The Court does not feel that there is sufficient prejudice from the making of the statement, which I am sure was made inadvertently as to require a declaration of a mistrial at this stage."

In *Cook v. State,* 225 Md. 603, 171 A. 2d 460, the Court of Appeals said at page 610:

"This Court has stated that the trial court is in an advantageous position to judge the question of prejudice, and its decision with reference thereto should not be reversed unless it is clear that there was prejudice."

On the record before us we find no prejudice.

*Judgments affirmed as to Count I and Count II.*
*Judgment reversed as to Count III; appellant to pay costs.*