505 A.2d 919

**Robert J. CASON**

v.

**STATE of Maryland.**

**No. 925, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

March 13, 1986.

Mark Colvin, Asst. Public Defender (Alan H. Murrell, Public Defender, Baltimore, on brief), for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore City, and Brian Murphy, Asst. State's Atty. for Baltimore City, Baltimore), on brief, for appellee.

Argued before BLOOM, KARWACKI and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

The seeds of this appeal were sown on December 13, 1984 when, after Robert J. Cason, appellant, having pled not guilty and elected to be tried by the court sitting without a jury, the trial judge granted, over the State's objection, appellant's request for a continuance.

The continuance was requested to permit the appellant to take a polygraph examination. The State's objection had several bases: (1) the timing of the request, there having already been several postponements granted; (2) the State did not agree to be bound by the results of the examination; and (3) the case was not the sort that would warrant a polygraph examination. The State expressed an additional concern:

Secondly, if you decide to do so, because a polygraph is not admissible by the Court of Appeals, whether we agree or disagree. They have so said it has not been admissible because it has not been determined scientifically reliable. I don't think this Court should be the one to hear the results of the polygraph in December, no matter what they are. I respectfully ask that if it is done, the case be sent to another judge if it is to be a court trial. That would be the State's position.

Appellant rejoined:

[The request that the court recuse itself in the event of a non-jury trial] is premature. So I ask that you not rule on that until Tuesday. Number two, this is no different

than having the defendant tell you in open court that he has a polygraph test, the result favorable to him, and he'd like to get it admitted under special circumstances and lay a foundation for that. That has happened numerous times and no court has ever found that the author of that is prejudiced in any way. It is no different than you hearing a confession of the defendant which is inadmissible for technical reasons unrelated to its reliability. Throwing out the confession and then presiding in a court trial, and that procedure was approved in *Hutchinson v. State* after the Court of Special Appeals took a position typical to Mr. Murphy's position, which was reversed by the Court of Appeals. We see no problem with this at this juncture whatsoever and we ask the court to do it.

The court did do it, and, as to the State's request that it not hear the case if the case were tried non-jury, it said:

Mr. Brian Murphy, with respect to asking me to exclude myself in the event this test goes one way or another, I will wait until Tuesday to make that decision. Therefore this case is continued until Tuesday for that purpose....

As so often happens, the unexpected occurred. The unexpected in this case was that appellant flunked the polygraph examination. Thus when the case was called, appellant, not unexpectedly, moved that the judge who had so recently been urged not to do so, recuse himself. In support of the motion, appellant argued:

The background is that, Judge, the defense approached the court with a suggestion that this case could be resolved by the polygraph, and originally the State took a position against it, and has maintained that position. And one of the arguments the State made against approaching the court with this suggestion was that if it came out in favor of the defense, that the court would not be able to fairly officiate in the matter, because it would be influenced substantially by the polygraph test results. We took the position that the defendant was going to pass the test, and that in any event, you would not be susceptible to being influenced by the test. However the more

we thought about it, especially in light of the results, the more we tend to agree now with the State that it is really unfair to both the court and the defendant to put the court in a position of having to preside over a court trial when the court has now been aware of the previous agreement, that the defendant has in fact failed a polygraph test.

The defendant does not have the option any longer of electing a jury trial, so there wouldn't be appearance of unfairness. He is locked into a court trial, and it is his belief, and he is asking me to argue this, Judge Ward, that this court could not compartmentalize the part—,

A position with which the State concurred:

I am, of course, an advocate of the State's position. I also want justice done. I would like to make sure—I don't know what the Court of Special Appeals or the Court of Appeals would do with this case if you decide that you cannot comparmentalize. I have no doubt you can. However, my problem would be that if the higher court would disagree with you in your ruling based upon their prior rulings, all we are going to do today is to take a temporary guilty or not guilty, whatever the case may be. Well, guilty. If it goes it goes up, and two years from now, when the court reverses, we will be back here before you or another Judge again. I want to see justice finally done today. That's another reason why I would join in Mr. Murphy's request you not hear it as a court trial knowing what you do.

The motion was denied.

Appellant next moved to change his election from court trial to a jury trial. He incorporated, as reasons for the motion, the same reasons he advanced in support of his motion for recusal. The State made no comment. This motioñ was also denied.

Other seeds were sown during the trial. The State produced testimony concerning the circumstances of the arrest. The arresting officer testified that, acting on a tip from an

informant that heroin was being sold at that location, he went to the corner of Riggs Avenue and Calhoun Street in an unmarked vehicle. Upon arrival, he observed appellant, along with approximately seven other black males standing on the corner outside the Club Pisces. The officer "observed [appellant] holding in his hand a paper bag in one, and in the other hand he was removing a glassine packet of white powder substance from that bag, having conversation with other black males." Upon the approach of the police car, the other males moved away and appellant put the items in his pocket and went into the Club Pisces, where, in the vestibule just inside the front door, he was confronted by the officer and arrested. Having taken appellant outside and caused him to place his hands on the police car, the officer testified that, as he was removing his handcuffs, appellant turned, struck him in the chest, and started to run. Appellant was apprehended. The officer, assisted by another officer, handcuffed appellant after appellant had attempted to throw a brown bag, containing sixteen glassine bags of heroin, from his jacket pocket into a sewer hole. A search of appellant turned up $466.00.

Appellant's version substantially contradicted the officer's. He testified that he was driven to that corner by a mechanic friend, with whom he had been seeking auto parts for his car, and that as he was crossing the street the unmarked police car pulled up. When he entered the bar, an officer ran in after him, told him that he had seen appellant throw drugs on the ground, and informed him that he was under arrest. At that point, appellant said, he tussled with the officer because he was angry at being falsely accused. Appellant also denied possessing narcotics. He explained that the $466.00 recovered from him had been withdrawn from the bank on October 31 to pay for repairs to his car.

On cross-examination, appellant was asked if he knew how heroin is normally packaged, in bundles of 25, for resale on the streets. Appellant responded, "no". When he was asked if he had ever seen heroin, appellant responded,

"Of course". He was then asked if he used heroin; appellant responded "no". The following colloquy then occurred:

Q. [By Mr. Brian Murphy, Assistant State's Attorney] It is fact, is it not, Mr. Cason, that back in—

MR. WILLIAM MURPHY: Objection.

THE COURT: How can I rule when I don't have the slightest idea what he's going to say?

MR. WILLIAM MURPHY: He's going to impeach him with a narcotics conviction. He can't do it as he knows.

THE COURT: You have to ask the question.

MR. BRIAN MURPHY: It is fact that back in 1966 you were convicted of two counts of possession of heroin; is that correct?

MR. WILLIAM MURPHY: Objection.

THE WITNESS: Correct.

THE COURT: Just one minute. Possession only?

MR. BRIAN MURPHY: That is what the record shows.

THE COURT: I am allowing the question on the basis of the fact that he says that he has no knowledge of heroin, except that he has seen it.

MR. WILLIAM MURPHY: He didn't say that. He was asked whether he used it. Judge he admits that he has seen it before. He knew what heroin was. He said he never used it. I think what Mr. Murphy is trying to do is bring in evidence to show that he used, in addition to trying to impeach his credibility.

\* \* \* \* \* \*

THE COURT: Overruled on that basis.

\* \* \* \* \* \*

Q. Mr. Cason, it is a fact that in 1972 in the Criminal Court of Baltimore City, you were convicted of two counts of possession of heroin?

MR. WILLIAM MURPHY: Objection.

Q. That is a fact; is it not?

THE COURT: Overruled. You may answer.

A. Yes.

Q. As a result of that conviction there and as a result of the fact you were a second offender, at that time you were sentenced to 16 years of prison. That is a fact; is it not?

MR. WILLIAM MURPHY: Objection.

THE COURT: Overruled.

＊　　＊　　＊　　＊　　＊　　＊

Q. Let me see if we understand this correctly. You used to sell heroin, but you don't sell heroin anymore. You didn't sell heroin in November, 1983. Is that a fair statement of the truth?

THE COURT: You went too fast.

Q. You used to sell heroin before November of '83, right?

A. I was convicted of selling heroin.

Q. But you didn't do that? You were convicted, but you didn't do that?

MR. WILLIAM MURPHY: I am objecting to all of these questions because I think they go to his right to self-incrimination. They are not relevant. They are highly prejudicial.

MR. BRIAN MURPHY: Your Honor, he testified—You waive your right to self-incrimination when you sit on a witness stand.

THE COURT: Yes the objection is overruled. The reason is based upon testing truthfulness of his prior statement when he said he does not recognize what these bags were and so forth. Go ahead. . . .

Appellant later, after other objections had been made and overruled, stated the basis for his objections to the entire line of examination:

MR. WILLIAM MURPHY: If [the defendant] testifies to it on direct examination, yes, it is fair game; but the State can't bootstrap by going into it impermissibly and saying he testified to it, now I can go into it all the way. That is why I consistently objected to it.

＊　　＊　　＊　　＊　　＊　　＊

[I]t is not relevant to this particular case on the issue of credibility because possession of narcotics is not an infamous crime, nor does it have anything to do with a person's veracity.

THE COURT: I agree with you as far as the Court of Appeals would say that.

\* \* \* \* \* \*

I am going to overrule it, and my reasons are based upon the three questions and his answer that he was previously asked which we have already gone over and are on the record.

After the State presented rebuttal testimony, the court inquired if counsel had "anything else". Appellant responded that he had nothing "except the bank records", to which the court observed:

Gentlemen, I want to see the bank records. I am interested in them. Most interesting case. Everytime that I think the case is going in some direction, it suddenly veers off again in some other direction. I want to see about this sum of money.

Then, at the suggestion of the State to argue the case immediately, the court decided:

I am going to let you argue everything. I will give you an extra few minutes after I receive the bank records. That is the way we are going to work it. I would like you to argue your cases tonight, today, this afternoon, and then I will give you an opportunity to comment on the bank record after it comes in.

The court made clear however that it was "going to withhold my verdict until—" the case was resumed. At the conclusion of appellant's argument, his counsel advised the court, "I will save whatever additional argument I have until you look at those records. It's going to be very interesting to see".

Upon reconvening, the court was advised that the bank records showed that the withdrawal was made on November 3, 1983 rather than October 31 and the bank book was

admitted into evidence as a defense exhibit. After denial of appellant's request to reopen its case to offer testimony to explain the discrepancy between what the bank book showed and his trial testimony, the record discloses the following exchange:

THE COURT: ... Does your client wish to say anything before I reach a verdict of innocence or guilty? [sic]

MR. WILLIAM MURPHY: I think—

THE COURT: Let me say this to you. I have made an analysis of the testimony and I had very good notes. I put each person's testimony down, and there's some surprising inconsistencies in the testimony produced by your witnesses. I can go into detail as to what this is ... That leaves me with the testimony of Detective Hardesty and the defendant himself ...

*   *   *   *   *   *

... There's no inconsistencies in any parts of the two officers testifying out of the presence of each other, either before or after, what the sequence of events are, with respect to time or place and where they were going. And their testimony as to what they saw makes the testimony of some of your witnesses unbelievable with respect to the bag itself because there's a great disparity that took place between Mr. Walker's testimony, Ms. Fraser's testimony and Mr. Davis' testimony and what they say with respect to the bag. The bag is a critical element because the bag contained the narcotics when the defendant obtained use of it.

*Finally we get to the testimony of the bank book. Of course there was another new wrinkle that took place at the end of the case, in which I was told the money was withdrawn, definitely withdrawn from the Union Trust Company at North and Linden the day before by the mother, who gave it to her son, so he could have money for parts. Now, the bank book shows that the money was withdrawn on the 3rd of November, which it was four days later. Is that correct?*

MR. WILLIAM MURPHY: Let me say, they would have to be absolute frauds and stupid to boot to deliberately testify about that bank book unless they were mistaken in the fashion we suggest they were. What would be the motive for one to come in and say that?

THE COURT: Let me say, *this case does not rise or fall on the bank book. The bank book was another element that I considered at the end.* I must admit I admire jurors how they remember everything that was said. I don't have that total recall. I must go back and look over my notes and records and think about it, which is what I did. *When I finished reviewing my evidence, before I knew the results of the bank book, I came to the conclusion that your client was not telling the truth.* Then I find out that the bank book also does not measure up. There is one more item that I put on the scale. *I want to be honest to tell you that I came to that conclusion before.* Frankly, I didn't know about the bank book. No one had leaked out to me what I was going to see. I asked for it way ahead of time but I never got it.

MR. WILLIAM MURPHY: Well, your Honor, I am at a loss for words.

THE COURT: You have done if I may say so, one of the most brilliant jobs for the defendant ... *I have no problem in this case of finding the defendant guilty beyond a reasonable doubt and to a moral certainty.*

MR. WILLIAM MURPHY: *Well, I would have liked to have argued the point with you, your Honor.*

THE COURT: I have given you many, many opportunities.

MR. WILLIAM MURPHY: *I mean the point of guilt or innocence.* But in light of what you said, I feel at a loss for words. *I had an argument that I wanted to present, but in the face of your resolute determination ...*

THE COURT: It is not a resolute determination.

MR. WILLIAM MURPHY: I am trying to put it a way that is not unfair, just a neutral description. You feel very strongly about it and—

THE COURT: Well, in this world it is not a matter of a personal thing; it is just a question of how I feel. I would have told you this. I still don't know anything about the lie detector test and it hasn't influenced me anyway one way whatsoever. But I am just telling you this, that if I had come to the conclusion at the end, even if I thought that your man in fact on other occasions was a drug dealer, you would have influenced me. *But after I carefully went through my notes, I had come to the absolute conclusion there was no question in my mind that on this day he was doing what the police said he was.*

MR. WILLIAM MURPHY: *In light of what you said, there is no point in saying anything in light of what you said. I don't want to just take up time. We are ready to proceed to the next phase.* (Emphasis added)

Having been found guilty, appellant was sentenced to a term of imprisonment of thirteen years, all but seven of which were suspended.

This appeal followed. Appellant submits five assignments of error:

1. The trial judge erred in refusing to recuse himself after learning that appellant had failed the lie detector test.

2. The trial judge erred in refusing to permit appellant to withdraw his waiver of the right to a jury trial.

3. The trial judge erred in allowing the prosecutor to question appellant about two prior convictions for possession of heroin and about having sold heroin in the past.

4. The trial judge erred in finding the appellant guilty before all of the evidence was presented and without first affording appellant the opportunity to make a closing argument.

5.  The trial judge erred in refusing to allow appellant to testify after the bank book was admitted into evidence.

Because we find the trial judge erred both in his denial of the motion for recusal and in refusing to permit appellant to change his election from court trial to jury trial, we will reverse. We will not reach assignment of error No. 5; however, we will address, for the guidance of the trial court on remand, the issues raised in assignments 3 and 4.

1, 2.

■ We have, only recently, in two cases, considered when a trial judge must recuse him or herself and refrain from trying a case. *See In Re George G.*, 64 Md.App. 70, 72–81, 494 A.2d 247 (1985); *Brent v. State*, 63 Md.App. 197, 492 A.2d 637 (1985). They make clear beyond doubt that, in this case, the trial judge erred in refusing to recuse himself. We think it equally clear that the trial judge's refusal to permit appellant to withdraw his election of a court trial in favor of a jury trial was an abuse of discretion. That this is so is even more obvious when the trial judge's ruling on the motion for recusal is considered. We will explain.

Maryland Rule 4–246(c) provides:

*Withdrawal of a waiver*—After accepting a waiver of jury trial, the court may permit the defendant to withdraw the waiver only on motion made before trial and for good cause shown. In determining whether to allow a withdrawal of the waiver, the court may consider the extent, if any, to which trial would be delayed by the withdrawal.

As may be seen by reference to the rule, the withdrawal of a waiver of jury trial is not an absolute right, rather it is one which will be permitted within the discretion of the court and upon a showing of good cause. The trial judge's exercise of discretion must, however, be sound, *State v. Jones*, 270 Md. 388, 393, 312 A.2d 281 (1973), that is, it must not be "arbitrary, vague, and fanciful, but legal and regular ..." *Wilhelm v. State*, 272 Md. 404, 438, 326 A.2d 707

(1974), quoting Lord Halsbury, L.C., in *Sharp v. Wakefield*, [1891] A.C. 173, 179. A trial judge's exercise of discretion carries with it a presumption of validity, therefore, the accused must establish an abuse of discretion before he is entitled to relief. *Mathias v. State*, 284 Md. 22, 28, 394 A.2d 292 (1978); *State v. Jones, supra*, 270 Md. at 393–94, 312 A.2d 281; *Brittingham v. State*, 63 Md.App. 164, 492 A.2d 354 (1985).

*State v. Jones, supra*, the leading case in this area, is instructive. There, the trial judge refused to allow the defendant to withdraw his jury trial waiver, finding that the waiver was a tactical maneuver on his part, that there was no assurance that if permitted to select another jury he would not again change his mind if he did not like the jury selected and that appellant's tactics were for the purpose of delay, hence an obstruction of the administration of justice. The Court of Appeals reversed this Court's decision finding an abuse of discretion, but in the process, set forth the considerations which go into the determination of "good cause" under the then applicable rule, Maryland Rule 741:[1]

> [T]he trial judge should consider, among other things, the reason expressed for making the request, when the request is made in relation to the time of trial, the lapse of time between the election and the requested change, whether there has been a change of counsel, whether the motion is made in good faith and not to obtain delay, whether the granting of the motion would unreasonably delay trial, impede the cause of justice or the orderly administration of the courts, prejudice the State's case, or unreasonably inconvenience witnesses.

---

**1.** "An accused may elect to be tried by a jury or by the court. Such election shall be made by the accused in open court when first called upon to plead after he is represented by counsel of record or has waived counsel. If an accused elects to be tried by the court, the State may not elect a jury trial. The court may, in its discretion and for good cause shown, at any time prior to the trial permit the accused to change his election."

*Id.* [270 Md.] at 395–96, 492 A.2d 354. It is "[w]ithin this framework [that] the trial judge is vested with wide discretion in deciding whether to permit the requested change in election." *Id.*

*Mathias v. State, supra,* is also instructive. There, the Court found no abuse of discretion where

> defense counsel had known for about a week that the codefendant was going to plead guilty and thus might well have anticipated that he might testify for the State, [there was] inconvenience to the State's witness from Pittsburgh, ... a jury was not available in the Harford County courthouse on the day in question, ... permitting the change would have meant postponement of the case for six to eight weeks, and ... had the court had notice of even a day or two of the desire to change the mode of trial a jury could have been provided....

*Id.* [284 Md.] at 31, 394 A.2d 292.

■ Neither *Jones, Mathias,* nor Maryland Rule 4–246(c) vests in a trial judge an unbridled discretion to grant or deny a request for withdrawal of a jury trial request. The discretion must be exercised, not only soundly, but "with due regard to the rights of an accused upon a showing of good cause." *See Mathias v. State, supra* (Cole, J., dissenting) 284 Md. at 35, 394 A.2d 292.

In the case *sub judice,* appellant sought to withdraw his jury trial waiver because the trial judge, who was aware that he failed a polygraph examination, refused to recuse himself, and to a lesser extent, because of the court's knowledge of some of the facts of the case. The request was made in good faith and there is no evidence that it was for purposes of delay.

■ When the case was resumed after the continuance for the taking of the polygraph examination, the first issue to be resolved was appellant's motion for recusal, a motion previously made by the State at the prior hearing, which was still pending, and, as to which, the State continued to side with appellant. When that motion was denied, appel-

lant immediately moved to withdraw his jury trial waiver. The motion was timely and the reasons for it, non-frivolous. That the reasons were the same as those which underlay the motion for recusal does not render the motion made in bad faith. In fact, in this case, but for the denial of the recusal motion, there would have been no motion to withdraw the waiver; thus, the denial of the recusal motion is a significant factor to be considered in determining if the motion was made in good faith. Moreover, the motion which was not opposed by the State, was not coupled with a request for continuance. Furthermore, there is, in the record, absolutely no indication that the granting of the motion would have unreasonably delayed the trial, impeded the cause of justice, or prejudiced the State's case. *See Staten v. State*, 13 Md.App. 425, 283 A.2d 644 (1971); *Cole v. State*, 12 Md.App. 379, 277 A.2d 248 (1971). Nor is there anything in the record to suggest that any witnesses would have been inconvenienced if the waiver had been permitted.

The court in *Jones* recognized that the right of trial by jury is fundamental and is best protected

> ... if the withdrawal of the waiver to such a trial is refused by a court only when it is not seasonably made in good faith, or is made to obtain a delay, or it appears that some real harm will be done to the public, i.e., the State, such as unreasonable delay or interruption of the administration of justice, real inconvenience to the court and the State, or that additional expense to the State will be occasioned thereby.

*Id.* 270 Md. at 394, 492 A.2d 354, quoting *Floyd v. State*, 90 So.2d 105, 106 (Fla.1956). No such factors are present here. We think it patent that the trial court abused its discretion.

### 3.

In *Ricketts v. State*, 291 Md. 701, 703, 436 A.2d 906 (1981), the Court of Appeals observed:

> The danger in admitting prior convictions as evidence to impeach the defendant stems from the risk of prejudice. The [factfinder] may improperly infer that the defendant

has a history of criminal activity and therefore is not entitled to a favorable verdict. Such evidence may detract from careful attention to the facts, ... influencing the [trier of fact] to conclude that if the defendant is wrongfully found guilty no real harm is done. Where the crime for which a defendant is on trial is identical or similar to the crime for which he has been previously convicted the danger is greater, as the [trier of fact] may conclude that because he did it *before* he most likely had done it *again*. The net effect of such evidence is often to discourage the defendant from taking the stand. (Emphasis in the original)

And it instructed that the trial judge's function is to admit, after having weighed "the probative value of the convictions against the prejudice to the defendant in asserting his defense", only such prior convictions as will assist the jury in assessing the defendant's credibility. *Id.* 291 Md. at 703–04, 436 A.2d 906. While evidence of a prior conviction for an *infamous* crime is always admissible to impeach credibility, *Id.* 291 Md. at 706, 436 A.2d 906; Md. Courts and Judicial Proceedings Code Ann. § 10–905, "[t]he admissibility of evidence of a witness' prior conviction of a *non-infamous* crime is left to the sound discretion of the trial judge who must consider the nature of the crime and the length of the time since it occurred in determining the relevance of the conviction to the witness' credibility." *Duckett v. State*, 61 Md.App. 151, 154, 485 A.2d 691 (1985).

■■■ A prior conviction for possession of heroin is not admissible for impeachment purposes.[2] *See Lowery v. State*, 292 Md. 2, 437 A.2d 193 (1981), citing *Ricketts v. State, supra.* It is not an *infamous* crime, *Garitee v. Bond*, 102 Md. 379, 383, 62 A. 631 (1905) ("The crimes which the common law regarded as infamous because of their

---

2. We address here only the admissibility, for impeachment purposes, of convictions for "simple" possession of heroin; our discussion is not to be read to include the sale of, or possession with intent to distribute, heroin.

moral turpitude were treason, felony, perjury, forgery and those other offenses, classified generally as *crimen falsi,* which impressed upon their perpetrator such a moral taint that to permit him to testify in legal proceedings would injuriously affect the public administration of justice."), or a crime involving moral turpitude. *Ricketts v. State, supra.* It is rather a lesser crime, the name of which does not tend to show that a person convicted of it is not to be believed under oath. *See Duckett v. State, supra,* 61 Md.App. at 157, 485 A.2d 691. Moreover, the subject convictions were more than ten years old. And, the issue in the case being one of credibility, the similarity of the crime on trial to the prior convictions admitted for impeachment purposes rendered the prejudicial effect of the admission of those convictions greater than their probative value. Thus, the error in admitting the prior convictions is reversible. *Ricketts v. State, supra.*[3]

The State, apparently conceding the inadmissibility of the prior convictions on "traditional" grounds, argues that "the inquiry in the instant case related specifically to appellant's claim that he had never used heroin and that he did not know how heroin is normally packaged for resale on the street. By this testimony, appellant opened the door to impeachment". It relies upon *Berlin v. State,* 12 Md.App. 48, 59, 277 A.2d 468 (1971).

We note first of all that *Berlin* is inapposite. There the appellant raised the defense of entrapment. It is

---

**3.** There is yet another reason that the admission of the prior convictions was error. When a prior conviction is used for impeachment purposes, "[t]he only details ordinarily allowed to be presented to the jury are the nature of the charge and the fact of conviction." *Ricketts v. State,* supra 291 Md. at 703, 436 A.2d 906, "and the punishment", *Foster v. State,* 304 Md. 439, 468–70, 499 A.2d 1236 (1986). In this case, the trial judge permitted the State to elicit, in addition, that appellant was in 1972 *a second offender.* So, even if the prior convictions were admissible, this additional detail was not and, in context, its admission prejudicial.

settled that evidence of prior and subsequent offenses may be admissible to rebut the defense of entrapment. *Wethington v. State*, 3 Md.App. 237, 238 A.2d 581 (1968). The general rule, however, is that "proof which shows or tends to show that the accused is guilty of the commission of other crimes and offenses at other times, even though they are of the same nature as the one charged, is incompetent and inadmissible for the purpose of showing commission of the particular crime charged". *Id.* 3 Md.App. at 240, 238 A.2d 581. Secondly, and most important, the State's reliance on the doctrine of "curative admissibility" is misplaced. That doctrine applies when the evidence to be rebutted is presented by the defense in the first instance. *See Savoy v. State*, 64 Md.App. 241, 253–54, 494 A.2d 957 (1985). Here, upon cross-examination, *the State* built the strawman which it now seeks to tear down.

     Appellant also justifiably contends that the evidence concerning appellant's prior sale of heroin was inadmissible as evidence of other crimes which does not fall within any of the accepted exceptions.[4] *See Cross v. State*, 282 Md. 468, 386 A.2d 757 (1978); *Ross v. State*, 276 Md. 664, 350 A.2d 680 (1976). *See also State v. Cox*, 298 Md. 173, 468 A.2d 319 (1983). We conclude, therefore, the admission of the evidence concerning the prior sale of heroin was also error and prejudicial error. *See Dorsey v. State*, 276 Md. 638, 350 A.2d 665 (1976).[5]

---

**4.** The fact that appellant sold heroin prior to his arrest in 1983 does not contradict or in any way negate his testimony that he never used heroin.

**5.** The State argues that the error was harmless error because the trial judge had once before tried appellant for another similar offense. We do not understand how that prior trial in any way affects the nature of the harm caused in this case by the improper admission of other crimes evidence and inadmissible prior convictions. Neither are we persuaded that appellant's being permitted to explain the circumstances of his prior sale of heroin renders the admission of the evidence harmless beyond a reasonable doubt.

4.

The last assignment of error which we will consider is appellant's contention that he was denied the opportunity to make a closing argument prior to rendition of the verdict. Again, we agree with appellant that the trial judge erred.

It is patent that in a court trial, the defense must be given the opportunity to make closing arguments prior to the rendition of a verdict. *Herring v. New York*, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975), *Spence v. State*, 296 Md. 416, 419, 463 A.2d 808 (1983), *Yopps v. State*, 228 Md. 204, 178 A.2d 879 (1962). The opportunity is lost if argument is permitted only after the verdict has been rendered and stricken. *Spence, supra* 296 Md. at 424–25, 463 A.2d 808. This is true because

> ... the presiding judge is obliged to display every indicia of having an open mind, subject to being persuaded by a logical and convincing argument, prior to announcing the verdict. Furthermore, the verdict is the moment which signals the defendant's fate. He is constitutionally enti- tled to an opportunity before that moment to attempt to convince the trier of fact that he is innocent or that he is not guilty beyond a reasonable doubt. Depriving him of this opportunity is tantamount to shortening his day in court and denies him of a fair trial. In our judgment, the striking of the verdict cannot restore the same stage, nor create the same atmosphere of fairness.

*Id.* 296 Md. at 423–24, 463 A.2d 808.

The State argues that appellant was afforded an opportunity for closing argument before the verdict was rendered. The State is only partially correct. Here, the trial judge advised appellant and the State that it thought the bank book was an important item of evidence for which it would wait before deciding the merits. Granted, prior to continuing the matter to await the production of the bank book, both appellant and the State argued their respective

positions; however, prior to those arguments the court told both that some time would be allowed for such additional argument as might be deemed necessary when the bank book was produced. Rather than awaiting the production of the bank book and the additional argument, the trial judge announced, much to appellant's surprise, that upon his review of his notes, he no longer considered the bank book an important item of evidence. Clearly, the change of position infringed upon the effectiveness of the argument already made and precluded any argument which appellant might have made concerning the bank book. In the first place, the trial judge closed his mind to the possibility that a cogent argument could have been made based upon the bank book. In the second place, the change of position signaled that the "atmosphere of fairness" so essential to closing argument no longer existed.

There is a question as to the preservation of the issue for appellate review, *see Cherry v. State*, 62 Md.App. 425, 433, 489 A.2d 1138 (1985); *Jackson v. State*, 63 Md.App. 149, 155, 492 A.2d 346 (1985), however, since the case will be remanded for a new trial, we need not address it. It is sufficient to point out that under the facts and circumstances of this case, appellant was effectively denied his right to complete his closing argument.

JUDGMENTS REVERSED AND THE CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR A NEW TRIAL.

COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.