2005 VT 11

## State of Vermont v. Cathy Ann Sweeney

[869 A.2d 137]

No. 03-425

Present: **Dooley, Johnson, Skoglund and Reiber, JJ., and Allen, C.J. (Ret.),**
**Specially Assigned**

Opinion Filed January 21, 2005

*William H. Sorrell*, Attorney General, and *John R. Treadwell* and *David E. Tartter*, Assistant Attorneys General, Montpelier, for Plaintiff-Appellee.

*Matthew Valerio*, Defender General, and *Henry Hinton*, Appellate Attorney, Montpelier, and *Anthony Parks*, Law Clerk (On the Brief), Warren, for Defendant-Appellant.

¶ 1. **Skoglund, J.** Defendant appeals from a conviction of domestic assault in violation of 13 V.S.A. § 1042. She contends the court erroneously: (1) denied her request to withdraw a waiver of jury trial; and (2) admitted the prior consistent statement of a witness. We affirm.

¶ 2. On August 22, 2002, defendant picked up her two children, N.S., her fourteen-year-old daughter, and A.S., her eleven-year-old son, after a weekend visit with their father, defendant's former husband. N.S. sat in the front passenger seat, while her brother sat in the rear. N.S. testified that defendant became angry when she learned that N.S. had spent time at her father's with A.G., N.S.'s best friend. According to N.S., defendant screamed and cursed at her and struck her repeatedly with her fist and open hand during the ride. When they arrived home, defendant had N.S. telephone A.G., shouted at them both, and continued to strike N.S.

¶ 3. After the telephone call, defendant took N.S., A.S., and her two step-children by a subsequent marriage to her place of work. N.S. later hitchhiked from there to another location and called her father to report the assault. At her father's direction, she then called the police, and was met by her father and a police officer who transported her to the police station where she made a report of the assault. A.G., who also met N.S. at the station, testified over objection that N.S. told her that defendant had struck her. The officer who met N.S. and took her statement testified that N.S. was initially upset and crying. Although the officer did not detect any bruises on her arm, N.S.'s father testified that N.S. had a lump on her head from the assault. Defendant acknowledged in her testimony that she had engaged in an argument with N.S., but denied the assault allegation.

¶ 4. At the conclusion of the two-day bench trial, the court entered its oral findings and decision in favor of the State. Defendant was sentenced to three to twelve months, all suspended, and placed on probation. This appeal followed.

¶ 5. Defendant first contends the court erred in denying her request to withdraw her waiver of jury trial. After defendant was charged with domestic assault in August 2002, she appeared before the court at a calendar call on September 24, 2002, and her attorney advised the court that defendant had requested a bench trial. The court then advised defendant of her right to a jury trial and elicited a waiver. De-

fendant does not challenge the adequacy of the colloquy with the court or the voluntariness of the waiver.

¶ 6. The parties were informed on January 3, 2003 that trial had been scheduled for February 6. On the morning of trial, defense counsel informed the court that defendant wished to withdraw her waiver of jury trial. The State objected to the late request, noting that it had invested substantial time in preparing its witnesses and having them ready for trial, and that the court had blocked out the morning in anticipation of a bench trial. The court denied the request to withdraw the waiver, finding that it would result in a waste of judicial resources and prejudice the State, which had subpoenaed witnesses and was prepared to proceed.

¶ 7. Although the right to waive jury trial and the procedures for executing a valid waiver are carefully set forth in V.R.Cr.P. 23(a), the rule is silent on a defendant's ability — or the showing necessary — to revoke a valid waiver, and we have not addressed the issue. Rules and case law from other jurisdictions generally provide, however, that the right to revoke is not absolute, but lies within the sound discretion of the trial court. See, e.g., *People v. Todd*, 687 N.E.2d 998, 1008 (Ill. 1997) ("The question of whether a jury waiver may be withdrawn rests within the discretion of the trial court unless the circumstances indicate the defendant was unaware of the consequences of the waiver." (quotation omitted)); *Woodson v. State*, 501 N.E.2d 409, 411 (Ind. 1986) ("Once appellant had effectively waived his right to trial by jury, the withdrawal of the waiver rested within the sound discretion of the trial court."); *State v. Fisher*, 891 P.2d 1065, 1069 (Kan. 1995) (noting that a knowing waiver of right to jury trial "cannot afterward be withdrawn except in the court's discretion" (quotation omitted)); *Cason v. State*, 505 A.2d 919, 926 (Md. Ct. Spec. App. 1986) ("[T]he withdrawal of a waiver of jury trial is not an absolute right, rather it is one which will be permitted within the discretion of the court and upon a showing of good cause."); *State v. Zemunski*, 433 N.W.2d 170, 174 (Neb. 1988) (observing that once the court obtains a proper waiver, "a defendant has no absolute right to withdraw or revoke the waiver and demand a jury trial," and that the question of whether a defendant may withdraw a voluntary waiver is within the trial court's discretion); *Marquez v. State*, 921 S.W.2d 217, 221-22 (Tex. Crim. App. 1996) (canvassing cases and adhering to "the prevailing trend to permit withdrawal of the waiver so long as it is in good faith and there are no adverse consequences" that would "prejudice the state, delay the case, impede justice, or inconvenience the witnesses"); *Commonwealth v.*

*Williams,* 553 S.E.2d 760, 764 (Va. 2001) (recognizing that a request to withdraw a jury trial waiver "is subject to the circuit court's discretion" in light of whether the request will result in substantial delay or impede justice). Given that courts "overwhelmingly agree" on this issue, *Marquez,* 921 S.W.2d at 220, we hold that the decision to permit or deny the withdrawal of a jury trial waiver falls within the trial court's discretion.

¶ 8. Appellate courts have taken different approaches, however, to the manner in which a trial court should exercise this discretion. Some jurisdictions require a defendant to make an affirmative showing of prejudice or a change in circumstances to justify withdrawal of the waiver. See, e.g., *Hutchins v. State,* 493 N.E.2d 444, 446 (Ind. 1986) (requiring defendant to show harm or changed circumstances). However, "the more common trend is to afford the defendant relief so long as other participants are not adversely affected" and the request is made in good faith. *Marquez,* 921 S.W.2d at 221 (collecting cases). Possible adverse consequences justifying denial of relief include prejudice to the state, undue delay of the trial, hindrance of the administration of justice, and significant inconvenience to witnesses. *Id.* We agree with the latter approach, and hold that a court should permit a defendant to withdraw a valid jury trial waiver if the defendant shows an absence of adverse consequences to others and demonstrates that the withdrawal is requested in good faith.

¶ 9. Although some courts have allocated to the state the burden of showing a lack of good faith or an adverse consequence flowing from the withdrawal, see, e.g., *Floyd v. State,* 90 So. 2d 105, 107 (Fla. 1956) (reversing trial court's denial of defendant's motion to withdraw jury trial waiver where there was no showing that the withdrawal was sought in bad faith or would result in any adverse consequence), we agree with those courts that have allocated the burden to the defendant, see, e.g., *Marquez,* 921 S.W.2d at 222 (collecting cases). Because the defendant is the party seeking to alter the status quo in this context, it follows that the defendant should shoulder the burden of justifying the relief he or she seeks.

¶ 10. To summarize, we hold that in order to withdraw a valid jury trial waiver, a defendant bears the burden of showing that the withdrawal is requested in good faith, and that granting the request would not prejudice the State, unduly delay the trial, impede the administration of justice, or significantly inconvenience the witnesses. This rule protects a defendant's constitutional right to a jury trial by conditioning withdrawal of a waiver on a showing of good faith and lack

of adverse consequences, rather than on an affirmative showing of prejudice to defendant or a material change in circumstance on the part of the defendant. At the same time, it preserves the ability of the trial court to promote the orderly and expeditious administration of justice by entrusting the decision to its sound discretion.

¶ 11. Applying these principles here, we discern no basis to disturb the trial court's ruling. The court, as noted, found that permitting defendant to withdraw her waiver literally moments before the trial was scheduled to commence would unduly delay the trial, inconvenience the State's witnesses — including the alleged teenage victim and her teenage friend — who had been subpoenaed and were ready to appear, and prejudice the State, which had prepared for trial and was ready to proceed. Balanced against these considerations, defendant made no claim that the waiver was invalid or involuntary in any respect, and offered virtually no justification for the last-minute request, although trial had been scheduled for over a month. Defense counsel accompanied the motion to withdraw with an objection to new evidence the State offered. Counsel made no effort, however, to connect the two issues or otherwise explain the basis of the revocation motion, and the court ultimately excluded the new evidence. Accordingly, we cannot find that the court abused its discretion in denying defendant's request to withdraw the jury trial waiver. See *People v. McCormick*, 839 P.2d 474, 481 (Colo. Ct. App. 1992) (holding that "it is within the trial court's discretion to permit revocation of the waiver [of jury trial] prior to commencement of trial" and affirming denial of motion because it was made on eve of trial and would result in logistical problems for witnesses), *rev'd on other grounds*, 859 P.2d 846 (Colo. 1993); *Marquez*, 921 S.W.2d at 223 (affirming denial of a request to withdraw a waiver where defendant made the request on the morning of trial and failed to demonstrate the absence of adverse consequences); see also *Mathias v. State*, 394 A.2d 292, 295 (Md. 1978) (recognizing, in the context of a request to withdraw a jury trial waiver, that the trial court's discretionary decisions enjoy "a presumption of validity").

¶ 12. Defendant next contends the court erred in admitting, over objection, N.S.'s friend A.G.'s testimony that N.S. told A.G. at the police station that defendant had struck her. On cross-examination of A.G., defense counsel elicited her acknowledgment that N.S. had not told her during their earlier telephone conversation that defendant had struck her. On redirect, the prosecutor asked whether N.S. had said "anything to you about [defendant] hitting her," and the witness

responded that N.S. had told her "at the police station." When the prosecutor then asked more specifically what N.S. had told her, defense counsel objected on hearsay grounds. After some discussion among the court and counsel, the court admitted the testimony as a prior consistent statement under V.R.E. 801(d)(1)(B), and A.G. testified that N.S. told her "[t]hat her mom had hit her."

¶ 13. Defendant asserts the court erred in admitting the testimony as a prior consistent statement because it was not made before N.S. had a motive to fabricate. See *State v. Carter*, 164 Vt. 545, 550-51, 674 A.2d 1258, 1262-63 (1996) (holding that a prior consistent statement is admissible to rebut a charge of recent fabrication or improper motive only when the statement was made before the charged fabrication or improper motive arose). The defense argues that N.S. fabricated the charges from the outset to achieve a change in her custodial parent, so that the statements about which A.G. testified were made after N.S. had a motive to fabricate, rendering A.G.'s testimony inadmissible. The State responds that the testimony was not admitted for its truth, but rather to rehabilitate N.S. as a witness, and therefore did not have to qualify under the prior consistent statement exception to the hearsay rule. See *State v. Church*, 167 Vt. 604, 605, 708 A.2d 1341, 1342 (1998) (mem.) ("When offered to rehabilitate a witness, a prior consistent statement is admissible when it has some rebutting force beyond the mere fact that the witness has repeated on a prior occasion a statement consistent with his trial testimony." (quotation omitted)).*

¶ 14. We need not resolve this issue, however, because, even assuming that the statement was erroneously admitted as a prior consistent statement, its effect was harmless beyond a reasonable doubt for two reasons. See *State v. Oscarson*, 2004 VT 4, ¶ 29, 176 Vt. 176, 845 A.2d 337 (noting that we may uphold a conviction if error in the admission of hearsay testimony was harmless beyond a reasonable doubt). First, A.G.'s testimony regarding N.S.'s statement at the police station was cumulative. See *id.* ¶ 32 (listing factors courts consider in calculating potential harm, including whether testimony was cumulative). A.G. had already testified without objection that N.S. told her about being hit by defendant at the police station. Moreover, the investigating officer had also testified that N.S. reported being struck by defendant. A.G.'s testimony regarding the prior consistent state-

---

* Although the prosecutor had argued at trial that the statement was not being offered for its truth, we note that the court admitted it as a prior consistent statement.

ment was thus of little or no additional corroborative value. Second, the court made no mention of A.G.'s testimony or the statement at issue in its decision. See *id.* ¶¶ 30-31 (recognizing that harmless error analysis must consider whether there is a reasonable possibility that the challenged evidence contributed to the verdict). The court, in rendering its verdict, explained that its decision turned on N.S.'s testimony, "on simply listening to her at trial [] and trying to look at all the motives one might have to not testify truthfully." Ultimately, the court explained that it "found her testimony straightforward and the testimony of a child that was not particularly thrilled about being put in this position." Thus, we hold that any error in the admission of A.G.'s testimony was harmless beyond a reasonable doubt.

*Affirmed.*